No. 97-657

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 236

IN RE THE MARRIAGE OF

THOMAS EDWARD PEARSON,

Petitioner and Respondent,

and

DEBRA KAY PEARSON,

Respondent and Appellant.

APPEAL FROM: District Court of the Twenty-First Judicial District,

In and for the County of Ravalli,

The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Richard A. Reep, Reep, Spoon & Gordon, Missoula, Montana

For Respondent:

Dexter L. Delaney, Brian L. Delaney, Mulroney, Delaney & Scott, Missoula, Montana

Submitted on Briefs: April 13, 1998


Decided: September 29, 1998


Filed:


_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.


**¶ The marriage of Thomas Edward Pearson (Tom) and Debra Kay Pearson (Debra) was dissolved on November 16, 1994, pursuant to the Findings of Fact, Conclusions of Law, and Decree entered by the Twenty-First Judicial District Court, Ravalli County. In entering the Decree, the court incorporated by reference a Marital and Property Settlement Agreement (Agreement) entered into by the parties on October 17, 1994, and an addendum to the Agreement entered into on November 15, 1994.**

**¶ On April 16, 1996, Debra moved the court to modify the provisions of the Decree relating to spousal maintenance and child support. While these motions were pending, Tom moved the court to enforce and modify the provisions of the Decree relating to visitation. On May 23, 1997, the District Court issued its Findings of Fact, Conclusions of Law, and Decree deciding all motions in favor of Tom and awarding Tom attorney's fees and costs. Debra appealed. We affirm.**

No

¶ **We restate the issues as follows:**

¶ **1. Did the District Court err in denying Debra's motion to modify the maintenance provision of the dissolution decree?**

¶ **2. Did the District Court err in denying Debra's motion to modify child support?**

¶ **3. Did the District Court err in granting Tom's motion to enforce visitation?**

¶ **4. Did the District Court err in granting Tom's motion to modify visitation?**

¶ **5. Did the District Court err in not addressing whether Tom violated the Agreement by failing to maintain or provide proof of life insurance coverage for the benefit of the children?**

¶ **6. Did the District Court err in awarding Tom attorney's fees and costs?**

## BACKGROUND

¶ **Tom and Debra married in November 1980. They had two children, Jennifer and Jonathan. Tom and Debra together built and operated Pearson Logging. Although Tom was the principal financial provider and Debra was the principal caretaker of the children, Debra was involved with Pearson Logging on a day-to-day basis. She not only kept the books of the business, but also prepared financial statements for the**

purpose of securing loans. Aside from her work at Pearson Logging, Debra briefly held jobs as a waitress and a fire-fighter.

¶ After fourteen years of marriage, Tom and Debra decided to divorce. To save time and money, Tom and Debra themselves negotiated a settlement, rather than seek independent counsel. They discussed the issues of property distribution and custody, visitation, and support of the children, and made a "list" memorializing all to which they had agreed.

¶ With list in hand, Tom and Debra hired an attorney to draft a settlement agreement and file the petition for dissolution with the court. The attorney testified that he represented Tom and Debra jointly. He testified that when Tom and Debra consulted him, they did not seek legal advice in obtaining a different property distribution, but simply asked him to draft a document reflecting their negotiated settlement. At that time, some details, such as allocation of the children's health insurance costs and uncovered medical expenses, had not been decided. After meeting with the attorney, the parties finally reached an agreement as to all issues pertaining to the dissolution. The attorney drafted the Agreement and the parties signed it on October 17, 1994. The attorney filed the petition for dissolution shortly thereafter.

¶ The Agreement provides that each party has entered into it voluntarily, with full knowledge and understanding of its consequences, and full disclosure of assets. The Agreement provides that the parties have entered into it free from fraud, duress, coercion, or unfair persuasion or domination of either party by the other or by any other person. The Agreement provides that it shall fully and finally settle all rights, duties, and obligations of the parties as set forth therein. The Agreement also provides that each party releases and discharges the other from further obligations.

¶ Regarding the marital property, the Agreement provides that Tom receives everything on "Exhibit A," including three parcels of real property; two mining claims; and Lots 1 and 4 of the Lost Trail Cabins subdivision. Debra receives everything on "Exhibit B" including the family home and real property in Stevensville; Tom's interest in a contract for deed for the sale of certain real property; Lot 1 of the Sunny Estates subdivision; and Lots 2 and 3 of the Lost Trail Cabins subdivision. Prior to consulting with the attorney, Tom and Debra negotiated an equitable division of the remaining assets including their logging business,

vehicles, camper, snowmobiles, and other personal property. The Agreement only makes general reference to these items and provides that each party is the sole and exclusive owner of those items presently in his or her possession. The Agreement also provides that each party is responsible for the liabilities associated with the assets he or she is awarded. Exhibits produced at trial showed that Tom received a total asset distribution worth $305,500, and Debra received a total asset distribution worth $385,710.

¶ Regarding spousal maintenance, the Agreement specifically provides that, having considered the factors set forth in § 40-4-203, MCA, neither party shall be entitled to maintenance.

¶ Regarding the children, the Agreement provides that Tom and Debra have joint custody, that Debra is the primary residential custodian, and that Tom has "liberal" visitation. The Agreement provides that the proceeds from the sale of lot 2 of the Sunny Estates subdivision will fund child support for the children. Pursuant to the contract for deed for the sale of this parcel, the buyer makes monthly payments of $437.86 over 15 years into escrow. The Agreement requires the escrow agent to deliver each monthly payment to Debra as primary residential custodian of the children. In the event Tom is designated primary residential custodian, the escrow agent is required to deliver the payment to Tom. If the parties eventually have split custody of the children, the escrow agent is required to deliver half of the payment to Tom and the other half to Debra. The Agreement acknowledges that payments are scheduled to continue several years after the children reach the age of majority, and provides that the monthly payments will be disbursed to the children even after the age of majority.

¶ For purposes of comparison, the parties completed child support financial affidavits and figured that pursuant to the Uniform Child Support Guidelines (Guidelines), Tom's child support obligation would be $82.50 per child per month until the children reached the age of majority. This child support obligation was based in part on Tom's annual income reported as $16,000. Both Tom and Debra thought that their proposal of funding child support with the contract receivable payments was an "excellent idea" as it provided more money to the children for a longer period of time than is required under the Guidelines. Further, the payments would be a steady, reliable source of income, independent of Tom's wage-earning ability.

¶ Initially, the Agreement provided that each party would alternate paying the children's monthly health insurance premiums, and that each party would be responsible for half of the uncovered and deductible sums incurred on behalf of the children. However, an addendum to the Agreement entered into November 15, 1994, changed this provision. Now, Tom pays Jennifer's health insurance coverage and Debra pays Jonathan's coverage. The provision regarding unpaid and deductible sums remains unchanged. With respect to Tom's life insurance, the Agreement provides that Tom shall continue to name the children as primary beneficiaries.

¶ Regarding modification, the Agreement provides that, except as provided in § 40-4-201(6), MCA, the provisions of the Agreement, and the Decree of Dissolution into which the Agreement is incorporated, may not be modified or amended without the parties' express written consent. Lastly, regarding attorney's fees, the Agreement provides that should any action be commenced to enforce, modify, or interpret any of its provisions, the court shall award a reasonable attorney's fee to the prevailing party.

¶ Soon after the dissolution became final, the parties experienced problems with visitation and child support. Visitation between Tom and the children proved to be troublesome. Debra testified that Tom spent less time with the children because he did not have the time or the room for them. Debra testified that the children did not want to visit their father because they did not like his new girlfriend. Debra testified that Jennifer did not want to visit her father because she did not like going into the woods, and that Jonathan often "came home unhappy" after visiting his father.

¶ Tom testified that Debra turned the children against him and was the real cause of the visitation troubles. Tom testified that he made several attempts to see the children, but that Debra refused to allow the children to see him. He testified that Debra wrongfully advised school officials that he was not allowed to visit the children in school.

¶ Because the "liberal visitation" provision of the Agreement proved not workable, Tom filed a motion to modify the Agreement and requested the court to set a visitation schedule with the children. After a hearing on the issue, the parties reached an agreement concerning a visitation schedule. The court incorporated this agreement into its Order dated August 1, 1995, which provided that Tom shall have visitation with both the children on alternating weekends, but that the daughter,

Jennifer, shall have the right to refuse visitation with her father if she so desires. Further, the Order provided that the parties shall alternate holiday visitation and shall divide visitation during the summer vacation period in half. The Order provided that the non-custodial parent shall have reasonable telephone contact with the children when they are in the custody of the other parent, and further required the parties to follow the Child Visitation Guidelines of the Twenty-First Judicial District.

¶ Despite this new agreement, the parties continued to have visitation troubles. Tom testified that Debra unduly influenced the children so they would not want to see him. Although Tom wanted to see Jennifer, she always exercised her "veto power" and denied visitation. Tom testified that Debra monitored and often recorded his telephone conversations with the children. He testified that at times, when he picked up Jonathan for weekend visitation, Jonathan was ill-equipped with toys and adequate clothing.

¶ Regarding child support, Debra testified that she had insufficient funds to properly care for the children. After the dissolution, Debra was employed as a full-time meat processor for two months. She quit this job so that she could spend more time with her children. Debra then worked part-time driving a dump truck and a school bus. Her job as a part-time dump truck driver later became unavailable, but Debra continued working as a school bus driver.

¶ Debra works ten hours per week and earns $300 per month as a school bus driver. This income was insufficient to cover her monthly home mortgage, three vehicle payments, and a furniture payment. She also testified that the children are now teenagers and have increased needs attendant to being a teenager. Debra testified that due to her lack of credit, she could not take out a loan to make her required payments and support herself and the children. She testified that her only option was to liquidate her assets and pay her debts in full. She testified she applied at the local job service but did not actively seek full-time employment because she liked spending time with her children, notwithstanding the fact that her children attend school much of the day. Debra sold all but two parcels of real property, and used part of the proceeds to pay all of her outstanding debts totaling approximately $61,000. She placed the remainder of the real estate proceeds in certificates of deposit (CDS). As Debra drew income of $279 per month from her CDS to supplement her $300 monthly wages and $437 monthly child support payment, the balance of the CDS

depleted.

¶ On April 16, 1996, Debra filed a motion for modification of the provisions of the dissolution decree pertaining to child support; payment of the children's health insurance premiums and uncovered sums; and spousal maintenance. Regarding child support, Debra requested that it be modified to amounts consistent with the Guidelines. In her affidavit supporting her motion, Debra attached a new Guidelines worksheet showing a much higher annual income for Tom, and a corresponding monthly child support obligation of $1697. Regarding the children's health insurance, Debra requested that the arrangement be modified so that each parent pays his or her proportionate share of the children's health insurance premiums and uncovered sums based on a ratio of the parents' relative incomes. Regarding spousal maintenance, Debra requested that she be granted sufficient maintenance to adequately provide for her re-education and training. Debra also requested attorney's fees pursuant to the Agreement.

¶ On August 30, 1996, Tom filed motions to enforce and modify the court's previous orders and decrees, and a motion for court-ordered counseling. Regarding the motion to enforce, Tom requested that the court require Debra to allow unencumbered telephone contact with Jonathan while he is in Debra's custody, and send Jonathan to him for visitation periods with adequate toys and clothing. Regarding the motion to modify, Tom requested that Jonathan's visitation schedule be expanded to include all Mondays following weekends during which he would normally have visitation, and Wednesday evenings every other week.

¶ A hearing was held as to all motions on April 18, 1997. On May 23, 1997, the District Court issued its Findings of Fact, Conclusions of Law, and Decree deciding all motions in favor of Tom and awarding Tom attorney's fees and costs. The court directed the parties to file affidavits setting forth calculations of reasonable attorney's fees and costs. On August 28, 1997, the court issued its opinion and order on the appropriate attorney's fees and costs to be awarded Tom. Debra appeals both the May 23, 1997 Decree and the August 28, 1997 Order of the District Court. Additional facts will be provided as necessary to dispose of the issues raised.

## STANDARD OF REVIEW

¶ Generally, in cases involving modification of child support and maintenance, we

review a district court's findings of fact to determine whether they are clearly erroneous. In re Marriage of Widhalm (1996), 279 Mont. 97, 100, 926 P.2d 748, 750 (child support); In re Marriage of Brown (1997), 283 Mont. 269, 272, 940 P.2d 122, 123-24 (maintenance). A district court's conclusions of law are reviewed to determine whether the court's interpretation of the law was correct. Widhalm, 279 Mont. at 100, 926 P.2d at 750. We review a district court's overall decision on modification of child support awards for abuse of discretion, keeping in mind the best interests of the children. Widhalm, 279 Mont. at 100-01, 926 P.2d at 750.

¶ Section 40-4-208(2)(b)(i), MCA, provides that a decree containing provisions relating to maintenance and support may be modified only "upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable[.]" There exists no set definition of unconscionability; rather, determinations of unconscionability are made on a case-by-case scrutiny of the underlying facts. Brown, 283 Mont. at 272, 940 P.2d at 123. Because a district court's determinations regarding changed circumstances and unconscionability are discretionary, Brown, 283 Mont. at 272, 940 P.2d at 124, we review these determinations for abuse of discretion. Brown, 283 Mont. at 272-73, 940 P.2d at 124. We review a district court's award of attorney fees for abuse of discretion. In re Marriage of Schnell (1995), 273 Mont. 466, 473, 905 P.2d 144, 148. In evaluating abuse of discretion, we look to whether the court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. In re Marriage of Wessel (1986), 220 Mont. 326, 333, 715 P.2d 45, 50.

DISCUSSION

*Issue 1*

¶ Did the District Court err in denying Debra's motion to modify the maintenance provision of the dissolution decree?

¶ **In analyzing Debra's request for maintenance, the court made the following**

findings with respect to the parties' Agreement: (1) that the parties intended the Agreement to fully and finally settle all financial rights, duties, and obligations; (2) that the parties released and discharged each other from further obligations; (3) that neither party was entitled to maintenance; (4) that the Agreement was not subject to modification except for matters relating to the custody, support, and visitation of the children pursuant to § 40-4-201(6), MCA. The court concluded that as a matter of contract and as a matter of law, the non-modification clause of the Agreement precluded an award of maintenance. In reaching this conclusion, the court applied § 40-4-201(6), MCA (1995), which provides that modification as to maintenance is prohibited if the decree of dissolution expressly precludes or limits modification of terms set forth in the decree. The court reasoned that because the decree expressly incorporated the parties' Agreement, and because the Agreement contained an express non-modification clause, modification as to maintenance was prohibited.

¶ Debra argues the above analysis is flawed in that the court misinterpreted § 40-4-201(6), MCA. Debra argues that § 40-4-201(6), MCA, requires a non-modification clause to be express as to maintenance in order to preclude modification of maintenance. In essence, Debra asserts that a non-modification clause of a marital property settlement agreement is ineffective if the parties do not state with particularity those terms of the Agreement to which the clause applies. We cannot agree with Debra's assertion because it contravenes the plain meaning of the statute and Montana case law interpreting the statute.

¶ Section 40-4-201(6), MCA (1995), states:

> Except for terms concerning the support, custody, or visitation of children, the decree may expressly preclude or limit modification of terms set forth in the decree if the separation agreement so provides. Otherwise, terms of a separation agreement set forth in the decree are automatically modified by modification of the decree.

In construing this statute, we must give effect to all of its provisions and particulars, and not insert what has been omitted or omit what has been inserted. Section 1-2-101, MCA. Section 40-4-201(6), MCA, only requires a non-modification clause to be express; it does not require a non-modification clause to be express as to the terms to which it applies.

Additionally, we have held that where a marital and property settlement agreement addresses maintenance and contains general release and non-modification clauses, as in the instant case, any attempt to modify maintenance is prohibited. In re Marriage of Johnson (1992), 252 Mont. 258, 261-62, 828 P.2d 388, 391. We hold that the court correctly interpreted the law and did not err in denying Debra's request for maintenance.

*Issue 2*

¶ Did the District Court err in denying Debra's motion to modify child support?

¶ **Before a child support obligation may be modified, the party seeking modification must demonstrate the existence of "changed circumstances so substantial and continuing as to make the terms unconscionable." Section 40-4-208(2)(b)(i), MCA. In her affidavit to the District Court, Debra listed several factors as evidence that modification of Tom's child support obligation was warranted. These factors can be grouped in two categories: those alleging changed circumstances which occurred after entry of the dissolution decree, and those alleging unconscionability of the parties' Agreement. Debra identified the following changed circumstances in support of modification: (1) Tom significantly decreased his visitation with the children such that Debra now has sole responsibility for their care; (2) Debra was forced to liquidate the bulk of the assets she received in the marital property distribution to support and care for the children; (3) Debra is entitled to a larger support award because Tom has earned more income; and (4) due to Debra's financial hardship and Tom's increased annual income, the children's health insurance premiums, deductibles, and uncovered sums should be allocated proportionately, based on a ratio of the parties' annual incomes pursuant to In re Marriage of Weed (1992), 254 Mont. 162, 166-67, 836 P.2d 591, 594.**

¶ **Debra listed the following as evidence that the Agreement was unconscionable: (1) the attorney who drafted the Agreement represented Tom's interests but not Debra's interests; (2) Debra is actually paying half of Tom's support obligation of $437 because she had a one-half ownership interest in the parcel that was sold to fund child support; and (3) the attorney's original child support calculation, which was used to determine whether the contract receivable payment was consistent with Tom's support obligation under the Guidelines, grossly understated Tom's income and overstated Debra's income.**

¶ The District Court made a specific finding with respect to each of Debra's claims pertaining to changed circumstances and unconscionability. The court ultimately determined that "no credible evidence was submitted by Debra that there has been some form of a continuing change in circumstances or to the effect that the current child support arrangement is unconscionable."

¶ On appeal to this Court, Debra challenges the court's determination regarding changed circumstances and unconscionability. In response, Tom argues we need not review Debra's claims pertaining to unconscionability of the parties' Agreement because they are not properly before the Court. We agree with Tom. We decline to review Debra's claims of error regarding unconscionability of the Agreement for two reasons.

¶ First, the information supporting Debra's claims of unconscionability was known by Debra, or should have been known by Debra, at the time the Agreement was entered. If, for the above reasons, Debra thought the Agreement unconscionable, she should have appealed the decree of dissolution within thirty days in accordance with Rules 4 and 5, M.R.App.P. Having failed in this regard, Debra's claims regarding unconscionability of the Agreement are time-barred.

¶ Second, it appears the District Court misinterpreted the correct standard to be applied in determining whether the child support provisions of the Agreement should be modified. As previously stated, before a child support obligation may be modified, the party seeking modification must demonstrate the existence of "changed circumstances so substantial and continuing as to make the terms unconscionable." Section 40-4-208(2)(b)(i), MCA. We have interpreted this standard to mean that a finding of changed circumstances is a prerequisite to any inquiry into the unconscionability of a prior support award. In re Marriage of Clyatt (1994), 267 Mont. 119, 123, 882 P.2d 503, 506 ("Absent a finding of changed circumstances, the court's analysis need go no further."). Here, the court found that Debra failed to meet her burden of showing a substantial and continuing change in circumstances "*or* that . . . the current child support arrangement is unconscionable." (Emphasis added.) Pursuant to the rule in Clyatt, once the court determined that Debra did not meet her burden of showing substantial and continuing changed circumstances, the court's analysis should have stopped.

¶ On appeal, Debra attempts to circumvent Clyatt by asserting that § 40-5-273,

MCA, provides for administrative review and modification of district court child support orders without making a threshold finding of changed circumstances. Based on this statute, Debra argues that a finding of changed circumstances is unnecessary in determining whether modification is warranted. Debra's argument is without merit. Debra did not seek modification through administrative review. Thus, § 40-5-273, MCA, does not apply to this case.

¶ Although the court unnecessarily inquired into unconscionability of the Agreement, doing so is not grounds for reversal of the decision. "We will uphold a district court's decision, if correct, regardless of the reasons given for the result." In re Marriage of Barnard (1994), 264 Mont. 103, 109, 870 P.2d 91, 95. We turn then to a discussion of whether the court correctly determined that Debra did not meet her burden of showing substantial and continuing changed circumstances.

¶ We have held that in order to demonstrate changed circumstances, a party must provide specific evidence about changed economic circumstances or actual increased need. In re Marriage of Gingerich (1994), 269 Mont. 161, 165, 887 P.2d 714, 716. The record must contain evidence concerning the children's financial needs and resources, as well as each parent's financial needs and resources. Duffey v. Duffey (1981), 193 Mont. 241, 244, 631 P.2d 697, 699.

¶ Debra identified four factors which she claims evidences changed circumstances warranting modification of child support. The court dismissed each claimed factor as not credible. First, Debra claimed that Tom significantly decreased his visitation with the children such that she now has sole financial responsibility for their care. Although Debra testified that Tom voluntarily decreased visitation, Tom testified that Debra refused him visitation, wrongfully advised school officials that he was not to see the children, and unduly influenced the children so they would not want to see him. The court found Tom's version of events more credible than Debra's.

¶ Second, Debra claimed she was forced to liquidate the bulk of the assets she received in the marital property distribution and, as a result, has insufficient funds to care for the children. There is no evidence supporting Debra's claims that she was "forced" to sell a portion of her assets, that she sold "the bulk" of her assets, and that she now has insufficient funds to care for the children. The record indicates Debra has many job skills lending to her employability, yet Debra elects to be underemployed. Thus, based on her employability, some amount of income can be

imputed to Debra. *See* § 46.30.1513, ARM. The record also indicates that at the time of the hearing, after paying her debts in full, Debra's net worth was at least $272,268 and at most $306,200. Debra failed to present concrete evidence that the $437 monthly child support payment she received was not meeting the children's needs. Based on the record, the court did not believe any of Debra's claims relating to insufficient funds.

¶ Third, Debra asserted that she is entitled to a larger support award because Tom earns more income than he reports. Debra claims that in calculating his annual income for 1994, 1995, and 1996, Tom wrongfully deducted depreciation and wrongfully omitted capital gains. Again, the court found that the facts do not support these claims. Regarding depreciation, § 46.30.1508(1)(c), ARM, allows for purposes of child support calculation a depreciation deduction "upon a showing of economic necessity." Upon testimony from both Tom and his accountant that the depreciation expense was legitimate, and represented a very real, out-of-pocket cost to Pearson Logging, the court found that the logging business takes a real toll on Tom's business equipment, and upheld the depreciation deduction.

¶ Regarding capital gains, § 46.30.1508(1)(a), ARM, provides that capital gains are included in determining gross income for purposes of calculating child support. However, the District Court has discretion to depart from the Guidelines if it finds that application of the Guidelines is inappropriate in a particular case. Section 40-4-204(3)(a), MCA. The record indicates that both Tom and Debra agreed to omit capital gains from Tom's annual income for purposes of calculating child support. Tom testified that the reason for this omission was that the capital gains derived from the sale of certain lands used for logging stemmed from a "once in a lifetime transaction," the likes of which Tom has never, and probably will never, experience again. The court found that Tom's child support calculation was consistent with Debra's testimony regarding treatment of capital gains. Based on these considerations, the court upheld the omission of capital gains from Tom's income calculation for purposes of child support.

¶ The record reflects that with the omission of capital gains, Tom's annual income for 1994, 1995, and 1996 was $17,954, $10,500, and $4311, respectively. The court found that these figures did not represent a substantial and continuing change in Tom's income compared to the $16,000 income figure that Tom utilized for child support calculation purposes prior to entry of the decree of dissolution. The court

also found that the parties' arrangement to utilize the monthly $437 contract receivable payment for child support was in the best interests of the children.

¶ Last, Debra asserted that due to her financial hardship and Tom's increased annual income, the children's health insurance premiums, deductibles, and uncovered sums must be allocated proportionately based on a ratio of the parties' annual incomes pursuant to In re Marriage of Weed (1992), 254 Mont. 162, 166-67, 836 P.2d 591, 594. We need not decide whether Weed applies to this case because we have already determined that the record does not support Debra's assertion of financial hardship nor her contention that Tom's annual income has significantly increased.

¶ The court dismissed each factor supporting Debra's claim of changed circumstances as not credible. We must give due regard to the opportunity of the trial court to judge the credibility of witnesses. Rule 52(a), M.R.Civ.P. It is the duty and function of the District Court to resolve conflicts in evidence, and we will not substitute our judgment for that of the District Court on such matters. Brown, 283 Mont. at 274, 940 P.2d at 125. We hold that the court did not abuse its discretion in determining that Debra failed to meet her burden of demonstrating substantial and continuing changed circumstances. We hold that the court did not err in denying Debra's motion for modification of child support.

*Issue 3*

¶ Did the District Court err in granting Tom's motion to enforce visitation?

¶ In granting Tom's motion to enforce visitation privileges, the District Court made the following finding:

> The record supports Tom's contention that he has been denied reasonable or liberal visitation with his children, particularly Jonny, and that Debra has substantially interfered with Tom's visitation privileges. The court finds that Tom continues to be entitled to liberal and reasonable visitation with his children . . . .

¶ **Without citation to authority, Debra contends that this finding is clearly erroneous because the court "ignored" certain evidence of Jonathan's apparent refusal to visit Tom. In particular, Debra assigns error to the court's failure to interview Jonathan and failure to reference a psychiatric report prepared by Dr. William Stratford (Dr. Stratford) in which Dr. Stratford stated that Jonathan "perceives [Tom's paramour, Karen] as being very hostile to him and, in fact, alleges that she has performed some cruel acts." Debra also asserts that at the time the court issued its findings, Tom was no longer privileged to "liberal" visitation because the court had imposed a new visitation schedule whereby Tom and Jonathan would have visitation on Wednesday nights on condition that Jonathan not have contact with Karen.**

¶ **We are not persuaded by Debra's contentions because they are clearly without support in the record. Our examination of the record reveals that the court recognized Jonathan's concerns about Karen, considered Dr. Stratford's recommendations, and attempted to fashion a workable visitation schedule to be followed until the court could issue its final rulings on the motions. The following exchange occurred at the conclusion of the April 18, 1997 hearing on which the court based its final rulings:**

> COURT: I will take this matter under advisement and have my opinion after receipt of those proposed findings.
>
> COUNSEL FOR DEBRA: Does the court have any sense of whether or not you even wish to speak with Johnnie?
>
> COURT: Well, now, as I understand, both parties appear to have some degree of confidence in Dr. Stratford. And I think I would be inclined in this case at least for the time being to follow Dr. Stratford's recommendations for the time being. And the arrangement he recommends would be through the end of the school year. [I]t would make sense to me to have [counsel] review it this summer, to have Dr. Stratford review it and make recommendations.
>
> COUNSEL FOR TOM: I am really glad that you brought this up. We still have a situation where Mr. Pearson is not having visitation.
>
> COURT: That needs to be corrected immediately. I don't think we should wait for findings to do that. [T]here does appear to be some conflict . . .

between [Jonathan] and the stepmother figure [Karen]. Could we have some agreement that these visitations will be outside of her presence at least through the end of the school year?

COUNSEL FOR TOM: [W]e would be willing to agree to that, pending the court's further determination on these issues. . . . But we did try and reach an agreement that there would be [Wednesday] visitation . . . [a]nd it just didn't turn out workable because Mrs. Pearson insisted on being around during the visitation period . . . .

After further negotiation, the parties reached an agreement whereby Tom would have Wednesday night visitation with Jonathan from 5:00 p.m. until 9:00 p.m., without Karen present, until final determination of the issues. Upon reaching this agreement, the court asked whether there were any objections, to which Debra's counsel responded, "That's acceptable, Your Honor."

¶ **A complete examination of the record, much of which is set out in the beginning of this opinion, reveals that substantial, credible evidence exists to support the court's finding that Tom was denied reasonable or liberal visitation. Both Tom and Debra presented evidence to the court regarding Tom's visitation with the children. The District Court found Tom's evidence more substantial and credible. Again, we defer to the District Court's ability to judge the credibility of witnesses. Rule 52(a), M.R. Civ.P. It is the District Court's function to resolve conflicts in evidence, and we will not substitute our judgment for that of the District Court on such matters. Brown, 283 Mont. at 274, 940 P.2d at 125. We hold that the District Court's finding regarding visitation was adequately supported by substantial evidence and, therefore, was not clearly erroneous. The court did not err in granting Tom's motion to enforce visitation privileges.**

*Issue 4*

¶ Did the District Court err in granting Tom's motion to modify visitation?

¶ **Tom requested that his visitation with Jonathan be expanded to include Mondays during the summer following normal visitation periods, and every other Wednesday**

evening. Pursuant to § 40-4-217(3), MCA, modification of visitation is allowed whenever modification would serve the best interest of the child. In re Marriage of Cox (1994), 266 Mont. 67, 71, 878 P.2d 903, 907. In granting Tom's motion, the court made the following finding:

> Based on the record, there is not a good reason to deny [Tom's motion]. The evidence before the court is that Jonny loves his father very much and wants to spend time with him, and the court finds that this would be in Jonny's best interest.

¶ Without citation to authority, Debra argues that this single finding is insufficient to support expansion of Tom's visitation. Debra also argues that the above finding was insufficient to support expansion of Tom's visitation in light of Dr. Stratford's recommendation that visitation be "restricted." We do not find Debra's arguments convincing.

¶ First, we note that although the above finding was the only one appearing under the heading entitled "Tom's Motion for Expanded Visitation," the numerous findings made in other parts of the court's opinion demonstrate that the court considered all the evidence relating to visitation and the best interests of Jonny. Second, we note that Dr. Stratford did not recommend that Tom's visitation with Jonathan be "restricted." Rather, Dr. Stratford recommended that overnight or weekend visitation with Jonathan be "tabled at this point." Dr. Stratford suggested that Tom have visitation with Jonathan one night a week through the end of school, at which time a new visitation schedule could be decided. Dr. Stratford specifically stated, "Jonny evidences a wish to see his father." We hold that the District Court's finding concerning expansion of Tom's visitation with Jonathan was supported by substantial evidence and was not clearly erroneous. The court did not err in granting Tom's motion to modify visitation.

*Issue 5*

¶ Did the District Court err in not addressing whether Tom violated the Agreement by failing to maintain or provide proof of life insurance coverage for the benefit of the children?

¶ With respect to life insurance, the parties' Agreement provides that "Husband shall continue to name the two minor children as primary beneficiaries under his life insurance policy." At the hearing, Debra testified that Tom violated the terms of the Agreement by failing to maintain or provide proof of life insurance coverage for the benefit of the children. Debra was cross-examined as to whether this issue was properly before the court because no motion had been filed requesting proof that Tom maintains life insurance for the benefit of the children. Debra was also cross-examined as to what exactly the Agreement provides concerning life insurance. Debra conceded that the Agreement did not require Tom to maintain life insurance; it only required Tom to name the children as beneficiaries to any life insurance policy he may have. Although Debra considered the life insurance issue "important," she failed to include any findings or conclusions pertaining to life insurance in her proposed findings and conclusions submitted to the court. The court did not address Debra's claim relating to life insurance in its Findings of Fact, Conclusions of Law, and Decree.

¶ Debra argues on appeal that the court's failure to address life insurance constitutes reversible error. We disagree. This Court will consider for review only those issues raised in the pleadings or otherwise before the District Court. Matter of Estate of Rogers (1986), 223 Mont. 78, 82, 725 P.2d 544, 546. The basis of this rule is that "it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given an opportunity to consider." Day v. Payne (1996), 280 Mont. 273, 276-77, 929 P.2d 864, 866 (citation omitted).

¶ In this case, the District Court was not given an opportunity to rule on Debra's allegation regarding life insurance. Debra failed to include this allegation in her initial pleadings to the court. Although she indirectly raised the issue in her direct testimony, she failed to further address the issue or seek a remedy in her proposed findings and conclusions submitted to the court. Upon hearing the exchange between Debra and opposing counsel during cross-examination as to whether life insurance was even an issue before the court, and having no proposed findings by either party on the subject, the court was entitled to treat Debra's life insurance allegation as a non-issue. We determine the court did not err in failing to address life insurance in its Findings of Fact, Conclusions of Law, and Decree.

*Issue 6*

¶ Did the District Court err in awarding Tom attorney's fees and costs?

¶ **The parties' Agreement specifically provides:**

> ATTORNEY'S FEES: Should any action be commenced to enforce, modify, or interpret any provisions contained herein, the Court, as a cost of suit, shall award a reasonable attorney's fee to the prevailing party.

Based on this provision, the court awarded Tom, as the prevailing party on all motions before the court, reasonable attorney's fees and costs. Debra argues that this award of attorney's fees should be reversed because it is inequitable. Debra asserts financial hardship and argues that requiring her to pay attorney's fees and costs in an amount equal to three years of her gross wages would adversely affect her ability to support the children. We have already determined that Debra's assertions of financial hardship are not credible. We determine that Debra's claim of inequity is without merit. Accordingly, we hold that the District Court did not err in awarding Tom reasonable attorney's fees and costs.

¶ **Affirmed.**

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART