No. 01-358

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 168

IN RE THE MARRIAGE OF

MARSHA L. KUMMER,

       Petitioner and Respondent,

   and

SAMUEL M. HEINERT,

       Respondent and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
                   In and for the County of Cascade,
                   The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              Steven T. Potts, Thompson & Potts, Great Falls, Montana

       For Respondent:

              Marcia Birkenbuel, Great Falls, Montana

                         Submitted on Briefs:  November 29, 2001

                                Decided:  July 26, 2002

Filed:

_____
                           Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    On May 31, 2000, Marsha Kummer (Marsha) moved the Eighth Judicial District Court for an increase in child support.  Following a hearing, the District Court granted the motion, increasing Samuel Heinert's (Samuel's) monthly child support obligation from $400 to $742.  Samuel appeals the District Court's Findings of Fact, Conclusions of Law, and Order.  We affirm.

¶2    The dispositive issue on appeal is whether the District Court abused its discretion in modifying the father's child support obligation.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    Marsha and Samuel were married in 1991 and have two children together, a son born in 1993, and a daughter born in 1994.  On August 26, 1998, the District Court entered a Decree of Dissolution (Decree), dissolving the marriage.  The Decree incorporated a Property Settlement Agreement (Agreement) that Marsha and Samuel executed on August 25, 1998.

¶4    Pursuant to the Agreement, the parents had joint legal custody, with Marsha having primary physical custody and Samuel having the children every other weekend and Tuesday and Friday nights.  The Agreement provided that Samuel would pay $400 in monthly child support to Marsha in accordance with the Montana Uniform Child Support Guidelines (Guidelines).  The parties later changed the weekly parenting schedule, agreeing that the children would continue to live primarily with Marsha, but would stay with Samuel on alternating weekends and on Monday and Tuesday nights in alternating weeks.

2

¶5     On May 31, 2000, Marsha filed a Motion and Brief to Modify Child Support asking the court to review and increase Samuel's support obligation to comply with the Guidelines. In the accompanying affidavit, Marsha alleged that since the Decree in 1998, there had been a substantial increase of costs for caring for the children, particularly their daycare costs.

¶6     On June 20, 2000, Samuel filed a Motion to Change Custody, which Marsha opposed. The parties entered into mediation where they settled all outstanding matters, other than the issue of Marsha's motion to increase Samuel's child support obligation. Marsha later filed a Child Support Financial Affidavit, which indicated the gross annual daycare cost for the two children was $5434 (an average of $453 per month).

¶7     The District Court held a hearing on the motion on April 5, 2001. At the hearing Marsha explained that the cost of daycare increased because the children were previously cared for by a family member at a reduced rate of $360 per month, or $4320 gross annual cost. However, when the children got older, they had to go to a different daycare which according to Marsha costs $5434 per year ($8 per child, per day, for school days, and $16 per child, per day, for summers and holidays). Marsha testified that she calculated the $5434 figure by going through the school calendar and figuring which days would be full childcare days ($16/child), and which days would be part days ($8/child). At the time, both children attended school all day (son in first grade and daughter in all-day kindergarten). Samuel did not offer any testimony or evidence concerning the cost of the children's daycare.

¶8     In both parties' most recent Child Support Guidelines Worksheets (Worksheets), which were attached to their Proposed Findings of Fact, Conclusions of Law and Orders,

3

each party listed the "child daycare costs less dependent care tax credit," figure as $4330 (i.e., $5434, less the tax credit). The parties' "net annual obligation" figures were also quite similar. Marsha figured her net annual obligation was $187 and Samuel's was $8,906; while Samuel figured Marsha's obligation was $267 and his was $8,674.[1] However, the parties differed considerably as to the amount of Samuel's monthly obligation because they disagreed as to how many days per year the children spend with each parent, which accordingly affected any adjustments to Samuel's support obligation.[2]

¶9    The disparate calculations stemmed from uncertainty as to which parent received "credit" for days that he or she dropped the children at school/daycare after an overnight visit. Marsha indicated the children spend 255 days per year with her, and 110 days per year with Samuel, while Samuel indicated the children spend 209 days per year with Marsha, and 156 days with him. Accordingly, although the Worksheets' "net annual obligations" were similar, the parties disagreed significantly on the amount of Samuel's monthly support obligation, with Marsha alleging Samuel owed $742 per month and Samuel contending he

---

[1]As custodial parent, Marsha's net annual obligation is her gross annual obligation (approximately $4600), less the total annual childcare and healthcare expenses that she pays (i.e., $4330 in daycare costs, and $75 in children's health insurance premiums).

[2]Under the Guidelines, adjustments to support obligations are allowed if any child spends more than 110 days with both parents. *See* § 37.62.138, ARM.

owed $485 per month since by his calculations, he spends more than 110 days a year with the children.

¶10     During the hearing, each parent testified concerning what he or she spent on the children. Marsha testified that she pays for all of the daycare costs, the school lunch punch tickets, the majority of the children's clothing, their shoes and coats, medical insurance, and other miscellaneous items (i.e, haircuts, daughter's gymnastics fee and gear, son's wrestling gear). Samuel testified that he paid for some of the children's school clothing (estimating he spent $100 per child last fall; and had recently spent $114 on his son), half of the swimming lessons the previous summer, and his son's wrestling program fee. Samuel also testified that he agreed to pay half the children's medical expenses, and that he has paid some medical costs in the past. However, on cross-examination, Samuel admitted that he still owed some back medical expenses from the previous year. Marsha testified that she has paid for the children's medical costs not covered by insurance, adding that although she has asked, she has not received any payment from Samuel towards those costs. Neither parent testified as to specific figures concerning medical expenses or insurance premiums at the hearing.

¶11     Marsha also explained that if the children need to come home sick from school, the school contacts her, and if it is a day Samuel is scheduled to pick them up, she will call Samuel to see if he can pick up the child. If Samuel cannot pick up the child, Marsha takes the sick child home and Samuel later collects him or her from Marsha's house.

¶12     The parties disagreed as to how many times Samuel took the children to the doctor. Marsha testified that since the divorce in 1998, she has taken the children to all their

5

appointments except for two. Samuel, however, disputed Marsha's testimony, and explained to the court that in just the past few days, both he and Marsha were present at two doctor appointments.

¶13 Following the parties' testimony, and after hearing arguments concerning the calculation of days, the District Court concluded that "the mother is the primary caregiver, that she receives support and assumes the responsibility for providing most of the needs for the children. And based on that, I'm going to give her credit for these daytime daycare periods that are in issue and apply the [administrative] rule that we have here."

¶14 Upon the request of the court, Marsha filed Proposed Findings of Fact, Conclusions of Law and Order, which the court adopted. The District Court found there had been a substantial and continuing increase in daycare expenses. The court concluded that the change in circumstances made the original child support terms unconscionable. The court also concluded that Samuel spends 110 days per year with the children, thus preventing him from receiving a reduction in his support obligation, and ordered Samuel's monthly obligation be increased to $742, beginning June 8, 2000. Samuel appeals the District Court's Findings of Fact, Conclusions of Law and Order.

## STANDARD OF REVIEW

¶15 We review a district court's determinations regarding substantial and continuing changed circumstances and unconscionability, pursuant to § 40-4-208(2)(b)(i), MCA, for abuse of discretion. *In re Marriage of Jarussi*, 1998 MT 272, ¶ 7, 291 Mont. 371, ¶ 7, 968 P.2d 720, ¶ 7 (citing *In re Marriage of Pearson*, 1998 MT 236, ¶ 30, 291 Mont. 101, ¶ 30,

965 P.2d 268, ¶ 30). We review a district court's overall decision on modification of child support awards for abuse of discretion, keeping in mind the best interests of the children. *Marriage of Pearson*, ¶ 29 (citation omitted).

## DISCUSSION

¶16     Did the District Court abuse its discretion in modifying the father's support obligation?

¶17     Samuel argues that there was an insufficient showing of changed circumstances as to warrant increasing his support obligation. Samuel contends that the costs of daycare did not substantially change, arguing there was only a $10 difference between costs in 1998 ($360 x 12 = $4320/yr) and those Marsha reported in 2000 ($4330).[3] Marsha counters that Samuel is comparing dissimilar figures, since the $4330 figure was actually daycare costs less dependent care tax credit, while the 1998 figure of $4320 was a gross total cost before any tax credit.

---

[3]In his reply brief, Samuel also argues that even if the daycare cost figures are accepted as accurate, the *total* supplemental expenses for the children increased only $9.08 per month when other expenses, such as health insurance premiums, are considered. However, this Court will not address an issue raised for the first time in a reply brief. Rule 23(c), M.R.App.P.; and *Unified Industries, Inc. v. Easley*, 1998 MT 145, ¶ 28, 289 Mont. 255, ¶ 28, 961 P.2d 100, ¶ 28 (citations omitted). Accordingly, we will not address this particular argument raised by Samuel in his reply brief.

¶18    A decree containing provisions for support may be modified "upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable[.]" Section 40-4-208(2)(b)(i), MCA.  Determination of "unconscionability" is made on a case-by-case scrutiny of the underlying facts. *Marriage of Pearson*, ¶ 30 (citing *In re Marriage of Brown* (1997), 283 Mont. 269, 272, 940 P.2d 122, 123).  In order to demonstrate changed circumstances, a party must provide specific evidence about changed economic circumstances or actual increased need. *Marriage of Pearson*, ¶ 44 (citing *In re Marriage of Gingerich* (1994), 269 Mont. 161, 165, 887 P.2d 714, 716).

¶19    The evidence presented at the hearing supports the court's conclusion that there was a substantial increase in the costs of daycare.  Based on the rate increase, the average monthly daycare expense went from $360 in 1998, to $453 in 2001, for a difference of $93 per month, which amounted to an overall increase of over 25%.  Moreover, during months when the children were in daycare for full days (i.e., summer and vacations), the costs of daycare alone were greater than the monthly $400 support payment from Samuel.  Samuel offered no testimony or evidence at the hearing to refute these new daycare costs.  When asked by the court if he disputed the daycare calculations, Samuel responded, "No," and added that he thought "the [daycare] figures are pretty close," and that both parties based their proposed findings on the $4330 figure.

¶20    We conclude Marsha made a sufficient showing of changed circumstances so substantial and continuing as to make Samuel's original support obligation unconscionable, and accordingly, the District Court did not abuse its discretion in modifying Samuel's support

8

obligation. However, we must now consider the amount that Samuel's support obligation was modified by the District Court, since Samuel also challenges the District Court's application of § 37.62.138, ARM, in determining the number of days per year that the children spend with him which, in turn, affected how much his support obligation was increased.

¶21 Rule 18 of the Child Support Guidelines, as set forth at § 37.62.138, ARM, provides in relevant part:

> (1) If any child of a calculation spends more than 110 days with both parents, there will be an adjustment to the portion of the obligation due and payable from one parent to the other.
> . . .
>
> (3) For the purposes of this rule, a day is when a child spends the majority of a 24 hour calendar day with or under the control of a parent. This assumes that there is a correlation between time spent and resources expended for the care of the child.
> . . . .

¶22 Samuel argues that the District Court misapplied § 37.62.138, ARM, by giving Marsha full credit for those days Samuel drops the children off at school. Samuel contends that he should receive credit for those days since the children spend the night with him, particularly in light of the fact Marsha also received credit for the days she dropped the children off at school and Samuel picked them up. For a two-week period, Samuel calculates that he spends six nights with the children, while Marsha has them eight nights.

¶23 Marsha counters that the District Court properly applied the administrative rule, arguing that because she takes primary responsibility for the financial support of the children

when they are in school (i.e., pays for majority of school clothes and all of lunches), Samuel is not entitled to credit against his child support for the hours the children are in school on the days he drops them off. Marsha argues that for every two-week period, Samuel has the children for more than twelve hours on only four days, as calculated under the administrative rule's definition of a day (majority of the 24 hours).

¶24 The District Court agreed with Marsha, and made the following relevant findings:

> Since the decree was entered in 1998, there has been a substantial and continuing increase in the costs of caring for the children, including their daycare costs.

> Marsha, as the primary parent, provides for most of the children's financial needs. She is responsible for the children while they are in school or daycare on all days except for Mondays in alternating weeks, and Tuesdays in alternating weeks, and during Father's 14 days of vacation each year. Marsha takes the children to and pays for doctor's appointments, haircut appointments, and she pays for their school lunches, and she takes off work to stay home with the children if they are ill. She provides the vast majority of the children's clothing and shoes and activity expenses.

¶25 Applying § 37.62.138, ARM, the court concluded that Samuel is not entitled to credit for the days that he has the children for less than twelve hours of a calendar day, calculating the total days Samuel has the children as follows:

> 14 days vacation
> 72 days alternating weeks from Friday at 5:00 p.m. until Tuesday at 6:00 a.m.
>     (credit for Saturday, Sunday and Monday for 24 weeks)
> 24 days alternating Tuesdays for 24 weeks out of the year.
> 110 Total days

¶26 We review a district court's overall decision on modification of child support awards for abuse of discretion. *Marriage of Pearson*, ¶ 29. In evaluating abuse of discretion, we

10

look to whether the court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *Marriage of Pearson*, ¶ 30 (citation omitted).

¶27 Whenever a district court modifies an order concerning child support, "the court shall determine the child support obligation by applying the standards in this section and the uniform child support guidelines adopted by the department of public health and human services pursuant to 40-5-209." Section 40-4-204(3)(a), MCA. Moreover, a support obligation determined under the guidelines is "presumed to be an adequate and reasonable support award unless the court finds by clear and convincing evidence that the application of the standards and guidelines is unjust to the child or to any of the parties or that it is inappropriate in that particular case." Section 40-4-204(3)(a), MCA. *See also, Welch v. Welch* (1995), 273 Mont. 497, 501, 905 P.2d 132, 135 (a district court's determination of child support modifications "is presumed to be correct and, absent an abuse of discretion, will not be disturbed") (citations omitted).

¶28 In reviewing the District Court's modification order, we recognize that the Guideline defining "days" with respect to possible adjustments to child support obligations (§ 37.62.138(3), ARM), offers no direction to district courts, or this Court, in how the "majority of the day" is calculated when children spend part of that day not under the explicit control of either parent, such as when they are in school or daycare. This lack of guidance may well lead to disparate calculations as to the numbers of "days" a child spends with one parent or another, as this case demonstrates. Because of the vagueness of the Guidelines, a district

11

court ends up engaging in a detailed day-by-day evaluation of expenses and levels of responsibility associated with children while they attend school/daycare, and an ensuing analysis of the correlation between such monetary resources or parental accountability and the allocation of "days" when calculating whether one of the parents spends over 110 days with the children.

¶29    Unless and until these Guidelines are amended by the Department of Public Health and Human Services, to truly provide guidance to a district court on how to allocate the "majority of a 24 hour calendar day," we will review a district court's determination of which parent "gets credit" for certain hours of a day, for an abuse of discretion.    Under this standard, we cannot conclude that the District Court abused its discretion when it calculated how many days per year Samuel spends with the children.  Moreover, we conclude that the District Court demonstrated the "**employment of conscientious judgment," when it** "credited" Samuel for two of the days the children were in school/daycare, even though it also concluded that Marsha had primary responsibility for the children while they attended school/daycare.  Accordingly, we conclude the District Court did not abuse its discretion, and we affirm the District Court's modification of Samuel's child support obligation.

/S/ PATRICIA COTTER


We Concur:

/S/ KARLA M. GRAY

12

/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART

Justice Terry N. Trieweiler dissenting.

¶30     I dissent from the majority Opinion.

¶31     I would conclude that there was no change in circumstances so substantial as to make the terms of the original decree unconscionable and, further, that the District Court erred by treating the parties inconsistently when deciding the parent with whom the children spend the majority of each 24-hour calendar day.

¶32     Section 40-4-208(2)(b)(i), MCA, provides that the child support provisions of an existing decree may be modified only "upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." Here, there was evidence that Marsha's cost of daycare increased by approximately $1,100 per year. However, there was also evidence that her medical expenses for the children and the cost of health insurance declined by approximately $1,000 per year and that the net increase in her expenses was $108.96 per year. However, whether the increase in daycare is offset by the decrease in other expenses for which there was evidence or is not, the range of increase in Marsha's expenses for which there was evidence is from $108.96 to $1,114. Neither increase is so unforseen or substantial that it renders the prior child support provision unconscionable, especially when considered with the fact that Marsha's income increased over the same period of time by nearly $5,000 annually. It certainly did not warrant an increase in child support in the amount of $4,104 annually. Therefore, I would conclude that the District Court abused its discretion when it found there were grounds to modify the previous child support provision.

¶33     Furthermore, I would conclude that the District Court erred when it treated the parties arbitrarily and differently for purposes of determining the parent with whom the children spent the majority of each 24-hour day. On those days when Marsha delivered the children

14

to daycare following nights spent with her, she was given credit for a majority of that 24-hour day. On those days when Samuel delivered the children to daycare following nights spent with him, Marsha was still given credit for having the children a majority of that day. That makes no sense to me. The majority accepts Marsha's lame rationale for this disparate treatment by pointing out that she takes primary financial responsibility for the children. However, that consideration is only relevant to the determination of which parent receives child support. It is not relevant to a determination of where the children are actually spending their time. The fact that Marsha actually pays for the children's expenses is why Samuel sends child support checks to her rather than vice-versa.

¶34 The majority observes that the child support guidelines give no guidance to a district court for determining where a child spends the majority of his or her day. However, specific guidance was not necessary in this case. All the District Court had to do was treat both parents in the same manner. The fact that there are no guidelines is no explanation for treating them differently under the exact same circumstances.

¶35 For these reasons, I would conclude that the District Court abused its discretion by reopening the issue of child support and then calculating child support based on an unreasonable determination of where the children were spending their days. I would reverse the order of the District Court and dissent from the majority's refusal to do so.

/S/ TERRY N. TRIEWEILER

Justice Rice joins in the foregoing dissent.

/S/ JIM RICE

15