No. 05-394

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 294

IN RE THE MARRIAGE OF

GERARDO MIDENCE,

        Petitioner and Respondent,

   v.

RACHEL HAMPTON f/k/a RACHEL
McCAULEY MIDENCE,

        Respondent and Appellant.

APPEAL FROM:    The District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV 2001-1204,
Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           W. Corbin Howard, Attorney at Law, Billings, Montana

       For Respondent:

           Chris J. Nelson, Attorney at Law, Billings, Montana

Submitted on Briefs: February 14, 2006

Decided: November 14, 2006

Filed:

_____
                        Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Rachel Hampton appeals from an order of the Thirteenth Judicial District Court, Yellowstone County, establishing child support. We affirm.

¶2    We address the following issues on appeal:

¶3    1. Did the District Court err by establishing child support at less than the amount legally presumed correct under the Montana Child Support Guidelines?

¶4    2. Did the District Court err by refusing to order child support retroactive to the date the parties originally agreed to recalculate temporary child support?

## BACKGROUND

¶5    On October 29, 2002, the District Court entered a final decree of dissolution ending Rachel and Gerardo Midence's marriage. Rachel and Gerardo's two children were eleven and nine years old. During the marriage, Rachel was a stay-at-home mother. She had earned an art history degree prior to the birth of their children. At the time of the dissolution decree, both parties agreed that Rachel would primarily care for the children, and Gerardo would provide child support. Gerardo, an oncologist, was leaving his current employment at the time of the dissolution and looking for new employment. Based on his annual salary of approximately $266,252 at his current practice, Gerardo would have been required to pay $2,994 per month in child support according to the Montana Child Support Guidelines (Guidelines). Because he had not yet found new employment, the parties agreed to temporary child support of $2,500 per month. Their agreement provided that this amount "shall be revised upon [Gerardo] securing [new] employment." Gerardo secured new employment in December 2002. He did not start

2

working until February 2003, although he received a draw from his new employer in January 2003.

¶6      In October of 2003, Rachel petitioned the court to enforce provisions of the decree, as well as to modify child support payments pursuant to their agreement. She requested the modified child support be retroactive to December of 2002, when Gerardo secured new employment. The District Court held a hearing on October 29, 2004, regarding recalculation of child support. The parties disputed Gerardo's level of income. The District Court found Gerardo's income to be $314,555.64. Rachel does not appeal this finding. Using this level of income, the District Court found that Gerardo's child support obligation for the two minor children would be $3,723 per month under the Guidelines.

¶7      Gerardo was in Chapter 13 bankruptcy at the time of the hearing. He was in the process of having his payment plan approved by the bankruptcy court. As a result of the bankruptcy, Gerardo's disposable income after paying personal living expenses, which include child support, goes to pay his unsecured non-priority creditors. At the conclusion of the plan, Gerardo will be discharged in full from his creditors.

¶8      At the hearing, Rachel testified that she lived better during the marriage than after the dissolution, and more importantly, the children had more money and opportunities during the marriage. However, she did not provide any details about the children's standard of living during the marriage. Rachel further testified that she wished to rely on child support as proof to a lending institution that she had steady income in order to secure a home loan. Since the dissolution, Rachel had not been employed, and she had

3

not engaged in any educational retraining. Rachel partly based her request for more child support on the fact that, since Gerardo had to pay his disposable income to creditors, he would be discharged from creditor debt regardless of what he paid, the money should go toward his children rather than the creditors.

¶9 With regard to the children's needs, Rachel testified during a deposition in November 2003 that it cost her $3,618.70 per month to meet the needs of both her and the two children. The District Court attributed one-third of these costs to Rachel and the other two-thirds to the children, leaving $2,412.47 per month to meet the children's needs. Rachel offered evidence at the October 2004 hearing that it cost her $2,753.24 to meet the needs of her and the two children. Using the same formula as with the deposition testimony, the District Court found that $1,835.50 per month was necessary to meet the needs of the children. Since either $2,412.47 or $1,835.50 would be much less than the $3,723 per month calculated pursuant to the Guidelines, the District Court found by clear and convincing evidence that following the Guidelines would be unjust to Gerardo and result in a windfall for Rachel. Essentially, it would amount to a tax-free maintenance award for Rachel, which would be especially unfair in light of the fact that she dropped her claim to amend the maintenance provision of the dissolution decree.

¶10 The District Court concluded that the amount of $2,990 per month, offered by Gerardo in an offer of judgment filed before the hearing, would be a reasonable child support award. In reaching this conclusion, the District Court noted that Rachel provided no evidence regarding the type of lifestyle enjoyed by the children prior to the dissolution, and that $2,990 per month would be between $578 and $1,155 more than the

4

children's monthly needs as documented by Rachel. The court further recognized that Gerardo had obligations to his children as well as his creditors, and thus her argument about receiving Gerardo's disposable income was not persuasive. The District Court also rejected Rachel's request to make the child support increase retroactive to the beginning of Gerardo's new job. The District Court determined that such retroactive application would be unjust because Gerardo had more than adequately taken care of the needs of the two children during the previous two years. This appeal followed.

## STANDARD OF REVIEW

¶11 In child support modification cases, this Court reviews a district court's findings of fact to determine if they are clearly erroneous. *In re Marriage of Martinich-Buhl*, 2002 MT 224, ¶ 12, 311 Mont. 375, ¶ 12, 56 P.3d 317, ¶ 12. This Court reviews a district court's conclusions of law to determine whether they are correct. *Marriage of Martinich-Buhl*, ¶ 12. Where a court modifies child support pursuant to § 40-4-208(2)(b)(i), MCA, its determinations regarding substantial and continuing changed circumstances and unconscionability are discretionary. Thus, we review those determinations for abuse of discretion. *In re Marriage of Jarussi*, 1998 MT 272, ¶ 7, 291 Mont. 371, ¶ 7, 968 P.2d 720, ¶ 7.

## DISCUSSION

¶12 **ISSUE 1: Did the District Court err by establishing child support at less than the amount legally presumed correct under the Montana Child Support Guidelines?**

¶13 Before modifying child support, § 40-4-208(2)(b)(i), MCA, requires a finding of substantial and continuing changed circumstances that make the terms of the original

5

support award unconscionable. *Marriage of Jarussi*, ¶ 7. Changed circumstances and unconscionability are distinct factors which must be independently addressed. *Marriage of Jarussi*, ¶ 7 (citing *In re Marriage of Clyatt*, 267 Mont. 119, 123, 882 P.2d 503, 506 (1994)). If a court finds that substantial and continuing changed circumstances surrounding the child support obligation exist, the court must then make a determination regarding unconscionability. *Marriage of Jarussi*, ¶ 7 (citing *Marriage of Clyatt*, 267 Mont. at 123-24, 882 P.2d at 506). In order to demonstrate changed circumstances, a party must provide specific evidence of changed economic circumstances or actual increased need. *In re Marriage of Kummer*, 2002 MT 168, ¶ 18, 310 Mont. 470, ¶ 18, 51 P.3d 513, ¶ 18 (citing *In re Marriage of Pearson*, 1998 MT 236, ¶ 44, 291 Mont. 101, ¶ 44, 965 P.2d 268, ¶ 44). Without specific evidence of changed economic circumstances or actual increased need, the change in a party's income is not a sufficient basis to warrant modification of the decree or to support a conclusion that there was a change in circumstances so substantial as to render the original decree unconscionable. *In re Marriage of Gingerich*, 269 Mont. 161, 165, 887 P.2d 714, 716 (1994).

¶14 District courts must follow statutory criteria and the Guidelines when ordering or modifying child support. *Marriage of Martinich-Buhl*, ¶ 19. Section 40-4-204(3)(a), MCA, requires a district court to apply the Guidelines "unless the court finds by clear and convincing evidence that the application of the standards and guidelines is unjust to the child or to any of the parties or that it is inappropriate in that particular case." If the district court makes such a finding of unjustness, "it shall state its reasons for that

6

finding," including "a statement of the amount of support that would have ordinarily been ordered under the guidelines." Section 40-4-204(3)(b), MCA.

¶15    Admin. R. M. 37.62.102(1) states that the "guidelines create a presumption of the adequacy and reasonableness of child support awards. However, every case must be determined on its own merits and circumstances and the presumption may be rebutted by evidence that a child's needs are or are not being met." If a variance from the guidelines is requested by one of the parties, the variance "must take into account the best interests of the child." Admin. R. M. 37.62.102(2).

¶16    In this case, the parties agreed to a variance in the stipulated parenting plan and order, which the court incorporated into the final decree of dissolution. This variance was based on the fact Gerardo's employment was going to change. The parties agreed that the child support order "shall be revised" when Gerardo found new employment. When Rachel petitioned the court to revise the child support to the amount the Guidelines suggested based on Gerardo's new salary, the court varied from the Guidelines and revised the amount of support by raising it $490 per month. The District Court found by clear and convincing evidence that the application of the Guidelines would be unjust to Gerardo. It concluded that although the circumstance of Gerardo's higher salary was substantial and continuing, the higher salary was not a sufficient basis to support a conclusion that there was a change in circumstances so substantial as to render the original decree unconscionable. Rachel failed to provide specific evidence of changed economic circumstances or actual increased need for the additional child support. In her deposition and trial testimony, the court found Rachel was actually receiving an amount

7

greater than the children's needs. However, pursuant to the parties' agreement to revise the support award, and Gerardo's offer to increase support to $2,990 a month, the court awarded $2,990 per month in child support. The court took into consideration the fact that the children's needs were being met, and stated its reasons why it found Rachel's request to be unjust. Namely, the court found that the requested increase in support would amount to a tax-free maintenance award for Rachel. Thus, the District Court's finding that the current award lacked unconscionability was not an abuse of discretion.

¶17 In its decision, the District Court relied on *Marriage of Jarussi* and § 40-4-208(2)(b)(i), MCA, using the changed circumstances and unconscionability factors. Rachel argues that neither *Marriage of Jarussi* or § 40-4-208(2)(b)(i), MCA, applies because the original award of child support was a temporary amount based on the parties' agreement to revise it when Gerardo obtained new employment. Rachel relies on *Stoneman v. Drollinger*, 2000 MT 274, 302 Mont. 107, 14 P.3d 12, for the proposition that a court can revise a temporary order of child support without proof of substantial and continuing changed circumstances that render the original award unconscionable as required under § 40-4-208, MCA. In this case, the child support was awarded pursuant to a stipulated parenting plan and order and incorporated into the final decree, which the parties relied upon for two years. It was not a temporary order.

¶18 Rachel argues the parties' agreement to revise child support constitutes a written agreement pursuant to § 40-4-208(2)(b)(ii), MCA. She further attempts to distinguish *Marriage of Jarussi* on the basis that the Jarussis' agreement was to *review* child support, unlike the Midences' agreement to *revise* child support. *See Marriage of Jarussi*, ¶ 13.

8

The court recognized this distinction. In *Marriage of Jarussi*, this Court determined that an agreement to review an award does not equate to written consent to modify the award. *Marriage of Jarussi*, ¶ 13. Based on this statement, the District Court concluded, and we agree, that an agreement to revise child support is not an agreement that the amount should be so large as to be unjust. Even when the parties agree to modify child support, but do not agree to the amount, the statutory criteria and the Guidelines are still applicable in determining whether a variance should be granted.

¶19 **ISSUE 2: Did the District Court err by refusing to order child support retroactive to the date the parties originally agreed to recalculate temporary child support?**

¶20 Rachel argues that, since she and Gerardo agreed to revise child support upon Gerardo securing employment, the increase in child support should be made retroactive to the beginning of Gerardo's new employment. She again contends that such a retroactive award would only harm Gerardo's creditors.

¶21 In refusing to order retroactive child support, the District Court found that Gerardo had more than adequately taken care of the needs of the children during the previous two years. In fact, the District Court found that the original amount of $2,500 per month was more than necessary to meet the needs of the children under both of the monthly expense calculations provided by Rachel. Given these facts, it was within the discretion of the District Court to refuse to order retroactive child support. *See Stoneman*, ¶ 50.

9

¶22 We affirm the child support established by the District Court.


/S/ W. WILLIAM LEAPHART


We concur:


/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS