**FILED**

June 11 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0353

DA 14-0353

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 159

STATE OF MONTANA,

        Plaintiff and Appellee,

   v.

BRENT MATTHEW PASSWATER,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC-12-410(B)
Honorable Robert B. Allison, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Thane Johnson, Johnson, Berg & Saxby; Kalispell, Montana

        For Appellee:

        Timothy C. Fox, Montana Attorney General, C. Mark Fowler,
Assistant Attorney General; Helena, Montana

        Ed Corrigan, Flathead County Attorney, Alison E. Howard, Deputy
County Attorney; Kalispell, Montana

Submitted on Briefs:  April 15, 2015
Decided:  June 11, 2015

Filed:

                             Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Defendant Brent Matthew Passwater (Passwater) appeals from the Judgment and Sentence of the Eleventh Judicial District Court, Flathead County, ordering him to pay restitution to Lynn Boots (Lynn), Bryce Boots (Bryce), and to the Crime Victim Compensation Program in the total amount of $618,816.41. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On July 11, 2012, Passwater failed to yield while making a left turn off of Montana Highway 83 and collided with a motorcycle. Bryce was driving the motorcycle and his wife Lynn was a passenger. Passwater was intoxicated at the time of the accident.

¶3 Lynn and Bryce (collectively the Boots) were hospitalized. Bryce suffered a broken left foot and Lynn's left leg was amputated below the knee.

¶4 On October 18, 2013, Passwater pleaded guilty to Negligent Vehicular Assault. A sentencing hearing was set for January 2, 2014, but was later continued until March 19, 2014.

¶5 On December 24, 2013, the State filed its Presentence Investigation (PSI) with the court. The PSI was delivered to Passwater on December 27, 2013. The PSI included a victim impact letter and an affidavit from the Boots claiming a total pecuniary loss of $1,427,318.01. A Life Care Plan (the Plan) was submitted with the PSI. The Plan was prepared by Jennifer Crowley (Crowley), a Certified Life Care Planner and RN at Eagleview West Life Care Planning. The Plan proposed $1,278,256.00 as the cost of future care for Lynn as a result of her injury.

2

¶6     On March 14, 2014, Passwater filed an Objection to the PSI.  In his Objection, Passwater disputed many of the expenses listed in the Plan, describing them as "speculation," and deriding the Plan itself as "gibberish."  Passwater instead proposed a restitution amount of $257,200.23.

¶7     A sentencing hearing was held on March 19, 2014.  At the hearing the Boots testified in support of their proposed restitution amount.  Passwater called a longtime amputee who testified about the cost of prosthetics.  No other witnesses testified regarding restitution damages.

¶8     On May 12, 2014, the District Court issued a Judgment and Sentence ordering Passwater to pay restitution of $593,828.01 to the Boots and $24,988.40 to the Crime Victim Compensation Program for a total restitution amount of $618,816.41.  Passwater timely appealed the court's judgment.

## STANDARDS OF REVIEW

¶9     What constitutes an appropriate measure of restitution is a question of law, which we review for correctness.  *State v. Aragon*, 2014 MT 89, ¶ 9, 379 Mont. 391, 321 P.3d 841.  "A district court's finding of fact as to the amount of restitution is reviewed under the clearly erroneous standard."  *Aragon*, ¶ 9.  "A finding of fact is clearly erroneous if 'it is not supported by substantial evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed.'"  *Aragon*, ¶ 9 (quoting *State v. Spina*, 1999 MT 113, ¶ 12, 294 Mont. 367, 982 P.2d 421).  "Substantial evidence 'is evidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence, but may be

somewhat less than a preponderance.'" *Aragon*, ¶ 9 (quoting *State v. Jent*, 2013 MT 93, ¶ 10, 369 Mont. 468, 299 P.3d 332).

## DISCUSSION

¶10     Passwater presents a single issue for review:

¶11     *Did the District Court err when it ordered restitution based on the Life Care Plan?*

¶12     Passwater suggests that the District Court erred for two reasons. First, he argues that the cost calculations in the Plan were too speculative to provide adequate foundation for the restitution award. Second, he argues that his right to due process was violated by the court's reliance on "uncorroborated hearsay" in the Plan when awarding restitution. Both arguments fail.

¶13     As a part of a criminal sentence, a court must order an offender to pay restitution to a victim who has suffered pecuniary loss as a result of the offense. Section 46-18-241(1), MCA. We have reversed awards of restitution when the amounts awarded were based on speculation or insufficient evidence. For example, in *Aragon*, we reversed a restitution award because the only evidence regarding the amount awarded consisted of two conflicting insurance estimates. We stated, "[a] reasonable mind could not conclude, solely from the two estimates, that one was more appropriate than the other." *Aragon*, ¶ 19. We remanded the case for further factual investigation and determination of the proper amount. *Aragon*, ¶ 22.

¶14     In *State v. Collucio*, 2009 MT 273, 352 Mont. 122, 214 P.3d 1282 (overruled on other grounds by *State v. Kirn*, 2012 MT 69, ¶ 8, n.1, 364 Mont. 356, 274 P.3d 746), we

4

reversed a restitution award because we determined that the testimony given in favor of the restitution award was overly speculative. There, after her husband was killed in a car accident, the victim (Troyer) testified to amounts of future costs associated with counseling, home repairs, and lost wages. *Collucio*, ¶¶ 41-44. As to counseling, she stated she was "at a loss" regarding how to calculate the cost, but did so by "[asking] a few friends that had been to counseling, approximately what to figure based on their expenses." *Collucio*, ¶ 41. Regarding home repairs, she stated that she "just assumed that I would spend a minimum of $100 a month paying somebody to do the things that [my husband] would be able to do himself." *Collucio*, ¶ 42. Finally, in calculating lost wages, Troyer used a pay stub from her husband's National Guard job showing half-year gross earnings of $27,608, but then adjusted his compensation based on what she felt he would "potentially earn" from his other jobs, arriving at an annual salary of $92,472 for a total loss of $2,992,165. *Collucio,* ¶ 43. She also presented a document prepared by a lawyer friend placing total lost wages at $1,338,504, but testified she did not know how that figure had been calculated. *Collucio*, ¶ 44. We reversed the district court on the issue of restitution and remanded for a legal and factual reconsideration of the damages for counselling, home repairs, and lost wages. We stated, "[a]ssumptions, ballpark figures from friends, and purely speculative calculations are insufficient information upon which to make findings of fact." *Collucio*, ¶ 45.

¶15     This case does not align factually with *Aragon* or *Collucio*. In those cases, the evidence presented in favor of restitution was not "substantiated in the record" such that "a reasonable mind" could conclude that the award of restitution was warranted.

5

*Collucio*, ¶ 45; *Aragon*, ¶ 19. In this case, the District Court had substantial evidence on which to base its decision to award restitution.

¶16    Evidence presented by the State included the Plan compiled by Crowley which recommended a total restitution amount of $1,278,256.00. The Plan itemized that total into categories of expenses and explained the purpose of each expense and how the total was reached. The Plan included citations to scholarly works, industry materials, government handbooks, and pricing data from retailers in support of the amounts given for each category. A letter from Crowley detailed her qualifications as an RN and a Certified Life Care Planner and her many years of experience in both fields. The letter also explained that she had consulted with several members of Lynn's heath care team in preparing the Plan, including an orthotist/prosthetist, orthopedic physician, physical therapist, and vocational expert. Further evidence presented by the State included the Boots' affidavit of pecuniary loss, claiming a loss of $1,427,318.01, as well as testimony from the Boots at the sentencing hearing detailing the costs they had already incurred due to Lynn's injury.

¶17    Passwater's response to the State's evidence included his Objection to the PSI, in which he suggested that Crowley was unqualified to complete the Plan and asserted that many of the amounts listed within the Plan were purely speculative. The Objection recommended a total restitution amount of $257,200.23, itemized into categories of expense, but did not explain how those expenses were calculated. At the sentencing hearing, Passwater called an amputee witness who testified that the cost of his prosthetic was less than the cost of Lynn's prosthetic as outlined in the Plan. In a closing statement

at the hearing, based on the amputee witness testimony and testimony from the Boots regarding costs they had incurred, Passwater adjusted his recommendation for restitution to $117,200.00.

¶18    At the conclusion of the hearing, the court awarded restitution of $593,828.01 to the Boots and $24,988.40 to the Crime Victim Compensation Program.  In doing so, the court went item by item through the Plan, awarding some expenses and reducing or eliminating others.  For example, the court pointed out that the $684,036.00 suggested cost of Prosthetic Devices and Supplies included "advanced technology future prosthetic devices," which the court found speculative.  The court reduced that amount to $352,836.00.  Similarly, the court reduced the $279,514.00 proposed cost of Home Health Care to $44,962.00.

¶19    Passwater argues that the District Court erred when it relied upon "speculative costs" contained in the Plan.  Passwater states that the Plan is "laden with 'maybes,' 'it depends,' and exorbitant unreasoned inflation of item costs."

¶20    We have held that restitution may be awarded "even though the actual losses may be uncertain, if the losses were calculated by use of reasonable methods based on the best evidence available under the circumstances."  *State v. O'Connor*, 2009 MT 222, ¶ 14, 351 Mont. 329, 212 P.3d 276 (citing *State v. Benoit*, 2002 MT 166, ¶ 29, 310 Mont. 449, 51 P.3d 495).  We have also acknowledged that there may be "some guess work" associated with determining losses sustained, but the restitution award may be sustained if based on the best evidence available.  *O'Connor*, ¶ 14.

7

¶21 "A district court's finding offact as to the amount of restitution is reviewed under the clearly erroneous standard." *Aragon*, ¶ 9. "A finding of fact is clearly erroneous if 'it is not supported by substantial evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed.'" *Aragon*, ¶ 9. "Substantial evidence 'is evidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance.'" *Aragon*, ¶ 9. Based on our review of the record we cannot conclude that the District Court's findings were clearly erroneous. As described above, the District Court was presented evidence from both sides concerning the appropriate amount of restitution. The Plan was prepared by an experienced individual consulting with health care professionals and with outside authority supporting its conclusions. We conclude that a "reasonable mind" could accept this evidence as adequate to support a conclusion, and that the Plan meets the "more than a mere scintilla of evidence" standard and qualifies as substantial evidence. The court accepted several of the Plan's suggestions but used its own judgment to amend amounts as it saw necessary to avoid speculation or unsubstantiated assumptions. This constituted a "reasonable method" to calculate a final award.

¶22 Between December 27, 2013 – the date the Plan was delivered to Passwater – and the March 19, 2014, hearing, Passwater had ample time to gather evidence rebutting the Plan. For example, Passwater could have called another Certified Life Care Planner or medical expert to rebut the expenses in the Plan, or have had an alternative life care plan prepared. Instead, Passwater simply dismissed the Plan as "speculative," dismissed

8

Crowley as unqualified, and offered an alternative measure of restitution without corroboration. Based on the evidence presented by Passwater, we cannot conclude the District Court erred by relying, in part, upon the Plan as the best available evidence.

¶23 Passwater also argues that his due process rights were violated because the Plan contained "hearsay upon hearsay upon hearsay . . ." and should not have been allowed as evidence. However, the rules of evidence do not apply to sentencing hearings. *Aragon*, ¶ 12. Montana Rule of Evidence 101(c)(3) ("Scope") states:

> (c) Rules inapplicable. The [Montana Rules of Evidence] (other than those with respect to privileges) do not apply in the following situations:
>
> .    .    .
>
> (3) Miscellaneous proceedings. Proceedings for . . . sentencing . . . .

Furthermore, we have long held that hearsay can be properly considered in sentencing. *State v. Bingman*, 229 Mont. 101, 113, 745 P.2d 342, 349 (1987) (citing *State v. D.B.S.*, 216 Mont. 234, 247, 700 P.2d 630, 639 (1985)); *State v. Dunkerson*, 2003 MT 234, ¶ 26, 317 Mont. 228, 76 P.3d 1085. Passwater's claim that he was prejudiced by the admittance of hearsay evidence at the sentencing hearing is unavailing.

¶24 It is true that a defendant has a due process right to "explain, argue, and rebut any information" presented at sentencing. *Aragon*, ¶ 12. Passwater, however, makes no claim that he was in any way prevented from doing so. As discussed above, Passwater had ample time to prepare a defense to the Plan and myriad ways in which to do so. If he was concerned with having first party testimony for cross-examination, he could have requested Crowley be subpoenaed. He could have subpoenaed the listed health care

9

specialists to testify about their expertise and their participation in creating the Plan.  He did not do so.

## CONCLUSION

¶25    The District Court did not err by admitting possible hearsay evidence in the sentencing hearing, because the rules of evidence do not apply to sentencing proceedings. Nor did the District Court err by relying in part upon the Plan to determine the appropriate amount of restitution.  The Plan was not purely speculative, and it was supported by substantial evidence.  Passwater was not denied the opportunity to rebut the State's evidence by presenting his own witnesses or evidence.  The District Court did not err in awarding restitution to the Boots.

¶26    Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JIM RICE