FILED

08/12/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0038

DA 25-0038

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 177

IN RE THE MARRIAGE OF:

KYLE SPENCER JACKSON,

      Petitioner and Appellee,

  and

HEIDI JACKSON,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Fifth Judicial District,
In and For the County of Jefferson, Cause No. DR-22-2017-32
Honorable Luke Berger, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Brian J. Miller, Morrison, Sherwood, Wilson & Deola, PLLP, Helena,
Montana

      For Appellee:

            Sarah Corbally, The Law Office of Sarah Corbally, PLLC, Helena,
Montana

Submitted on Briefs:  May 28, 2025

Decided:  August 12, 2025

Filed:

                              _____
                                   Clerk

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1     Heidi Jackson (Heidi) appeals the January 2025 order of the Montana Fifth Judicial District Court, Jefferson County, denying her motion to modify child support. We address the following restated issue:

> *Did the District Court abuse its discretion when it denied Heidi's request to conduct discovery and hold an evidentiary hearing regarding modification of child support upon finding no changed circumstances?*

We reverse and remand for further proceedings in accordance with this Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     Heidi and Kyle Jackson (Kyle) were divorced on December 31, 2018, after 17 years of marriage. At that time, the District Court awarded Heidi, a homemaker, maintenance of $5,000 per month for five years (ending December 2023) and calculated child support based on Heidi's total annual imputed income[1] of $91,200, including $31,200 calculated at $8.30/hour (Montana's 2018 minimum wage) for a 40-hour workweek[2] and $60,000 in maintenance. Kyle's annual income for child support calculation was established at $481,484. Based on these calculations, the District Court ordered Kyle to pay $421 per month per child as child support for the couple's six children.

---

[1] "Imputed income" means "income not actually earned by a parent, but which is attributed to the parent." Admin. R. M. 37.62.106 (2022). "When a parent is voluntarily unemployed or under-employed, a court may impute income based upon his or her capacity and ability to earn." *In re Marriage of Bee*, 2002 MT 49, ¶ 22, 309 Mont. 34, 43 P.3d 903.

[2] The District Court erroneously stated that the $31,200 annual income was "based on Montana's minimum hourly wage of $8.30 and a forty-hour workweek." But an $8.30 hourly wage equals a $17,264 annual salary. Instead, the $31,200 annual salary was based on Kyle's proposal that Heidi should be imputed a $15 hourly wage.

2

¶3 In July 2019, seven months after the parties' divorce, Heidi was involved in a severe automobile accident, suffering a traumatic brain injury rendering her unable to work for approximately two years. In 2021, Kyle ceased paying Heidi maintenance upon her remarriage. In 2022, Heidi contracted Covid-19, following which she experienced ongoing health issues and autoimmune disease through 2024.

¶4 In December 2024, Heidi filed a motion for modification of child support pursuant to § 40-4-208(2)(b)(i), MCA, seeking discovery and an evidentiary hearing regarding Kyle's income and alleging that changed financial circumstances made the existing child support order unconscionable.[3] In her brief in support, Heidi argued that, since 2018, her maintenance payments had expired. She reported she did not have a reliable income at that time but planned to begin working full-time for the Legislature earning $24/hour. Notwithstanding, to justify modifying child support, Heidi cited the cessation of maintenance which resulted in a 65% decrease in her imputed income and rendered the 2018 child support order inadequate to support the children. At that time, three of the couple's six children had turned 18 years old and therefore, under the decree, Kyle was paying $1,263 total per month for the three children under age 18.

¶5 Kyle opposed Heidi's motion and request for discovery. Acknowledging that he stopped paying spousal maintenance when Heidi remarried in 2021, Kyle denied that cessation of maintenance constituted changed circumstances because the 2018 decree

[3] Because the District Court did not permit discovery or hold an evidentiary hearing on Heidi's motion to modify child support, we take the facts here from the parties' filings on that motion and included affidavits.

3

anticipated those payments would end in five years anyway.  He argued Heidi failed to allege either that his financial circumstances had changed since 2018, or that the children's needs had changed since then.  Kyle noted that Heidi was apparently working as a real estate agent but "her income from this line of employment [was] unclear."  Nevertheless, Heidi had "enough time" to supplement the maintenance payments with her own income and the court could thus "reasonably impute the same amount of income to Heidi . . . that it used in its initial child support calculations."  Finally, Kyle denied that discovery was necessary because expert witnesses had already established his income during the 2018 divorce proceedings and it had not changed since then.[4]

¶6      In reply, Heidi addressed the changed circumstances in more detail.  In July 2019, seven months after the parties' 2018 divorce, Heidi was in a debilitating car accident from which she suffered a traumatic brain injury, requiring two months of rehabilitation and rendering her unable to work for two years.  She received a settlement from that accident, which had been "significantly depleted" by her and the children's living expenses.  She also contracted Covid-19 in 2022 followed by prolonged autoimmune symptoms that negatively impacted her health and delayed entry into the workforce.  She included a letter

---

[4] Kyle also claimed Heidi owed him for her portion of various bills associated with the children, but said he never sought enforcement of the decree "to avoid further litigation."  Heidi claimed Kyle had been withholding child support from her since June 2024, only paying part of what he owed, and provided screenshots of payments received from July-October 2024 for between $1,012 and $1,083 monthly (Kyle owed $1,263 monthly under the decree).  A spreadsheet of expenses attached to Kyle's response showed that, in June 2024, Kyle "subtracted from [the] June child support check" an unpaid sum he claimed Heidi owed him.  On appeal, Kyle admits that he withheld support for four months in 2024 but claims he had a change of heart in November 2024 and paid Heidi "the remaining amounts he owed" in that month's child support check.

from her physician confirming these assertions.[5]  Heidi admitted she once worked as a real estate agent, but only had one listing, which was canceled, so she made no money.  As for Kyle's income, Heidi alleged it had increased since 2018, as evidenced by his orthodontist practice expanding, living in a million-dollar home, and recent purchase of a speed boat and two new vehicles.  Finally, in her affidavit, Heidi asserted that "the children's health insurance need[ed] to be addressed" because the children were "not insured by Kyle through an appropriate health care plan at present," including one "child with special needs who need[ed] appropriate health insurance."

¶7     In January 2025, without granting Heidi's request for discovery or holding a hearing, the District Court summarily denied modification of child support.  The court acknowledged that Heidi's car accident delayed her achieving the expected earning capacity but agreed with Kyle that cessation of maintenance after five years was a "foregone conclusion" under the 2018 decree.  It characterized Heidi's car accident, the failure of her remarriage, and her inability to secure a career path as "circumstances outside of Kyle's control."  Noting that Kyle had the same job and the same spending habits, the court also found Heidi's allegation that Kyle's income increased since 2018 speculative without "concrete evidence" and stated it was "easily as realistic" that Kyle was living

---

[5] The June 2024 letter explained that, over the past four years, Heidi "experienced significant challenges due to a combination of a brain injury from an auto accident and autoimmune disease issues, which have had a profound impact on her life.  These impairments have made it challenging for Heidi in various ways.  In addition, there was a serious incident resulting in two hospitalizations in Great Falls and Salt Lake which required extensive rehabilitation.  Medical care is ongoing. Additionally, the autoimmune disease has further complicated her medical condition, leading to frequent flare-ups and exacerbating her symptoms."

beyond his means just as he did during their marriage. In the court's view, "nothing with Kyle ha[d] changed" warranting further examination of his financial circumstances. Finally, notwithstanding Heidi's claim that the children, including a special needs child, were underinsured, the District Court similarly concluded that Heidi made no showing of a change in the children's needs warranting modification of child support. Heidi timely appeals.

**STANDARD OF REVIEW**

¶8 In cases involving modification of child support, we review a district court's findings of fact for clear error and its conclusions of law for correctness. *In re Marriage of O'Moore*, 2002 MT 31, ¶ 8, 308 Mont. 258, 42 P.3d 767. However, because a court's determinations under § 40-4-208(2)(b)(i), MCA, are discretionary, we review the court's overall decision on modification of child support for an abuse of discretion, "keeping in mind the best interests of the children." *In re Marriage of Pearson*, 1998 MT 236, ¶ 29, 291 Mont. 101, 965 P.2d 268; *In re Marriage of Kummer*, 2002 MT 168, ¶ 15, 310 Mont. 470, 51 P.3d 513; *O'Moore*, ¶ 18. We also review a district court's decisions not to grant discovery or hold an evidentiary hearing for an abuse of discretion. *Rocky Mt. Enters. v. Pierce Flooring*, 286 Mont. 282, 298, 951 P.2d 1326, 1336 (1997); *Brown v. Brown*, 2016 MT 299, ¶ 11, 385 Mont. 369, 384 P.3d 476.

¶9 A court abuses its discretion when it exercises granted discretion based on a clearly erroneous finding of fact, an erroneous conclusion or application of law, or otherwise acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. *Bessette v. Bessette*, 2019 MT 35, ¶ 13, 394 Mont.

262, 434 P.3d 894. A finding of fact is clearly erroneous if not supported by substantial evidence, the lower court misapprehended the effect of the evidence, or our review of the record leaves us convinced the lower court made a mistake. *State v. Passmore*, 2015 MT 159, ¶ 9, 379 Mont. 372, 350 P.3d 382.

## DISCUSSION

¶10 *Did the District Court abuse its discretion when it denied Heidi's request to conduct discovery and hold an evidentiary hearing regarding modification of child support upon finding no changed circumstances?*

¶11 Montana's child support laws "emphasize one fundamental principle: child support should be sufficient to maintain the standard of living a child enjoyed before dissolution after his or her parents have separated." *Albrecht v. Albrecht*, 2002 MT 227, ¶ 41, 311 Mont. 412, 56 P.3d 339 (citing Admin. R. M. 37.62.101(2) (1998) (Montana's Child Support Guidelines) ("a child's standard of living should not, to the degree possible, be adversely affected because a child's parents are not living in the same household") (punctuation altered)). The law seeks to apportion responsibility for child support equitably between the parents with the goal of serving the child's best interests. *See Albrecht*, ¶ 12. Therefore, child support "must reflect a balance among the needs of the parties involved and the ability of the parents to pay." *Rome v. Rome*, 190 Mont. 495, 497, 621 P.2d 1090, 1092 (1981); *accord In re Marriage of Noel*, 265 Mont. 249, 251, 875 P.2d 358, 359 (1994) (parents must "contribute child support in an amount proportionate to that parent's share of the combined resources of both parents"); *In re Marriage of Thane*, 238 Mont. 349, 353, 777 P.2d 881, 884 (1989) (parents must contribute "in proportion to [their] ability to make such contributions"). Where child support is inadequate, children

7

suffer the consequences. *See In re Marriage of Carlson*, 214 Mont. 209, 215, 693 P.2d

496, 499 (1984); *Albrecht*, ¶ 12; *McNeff v. McNeff*, 207 Mont. 297, 301, 673 P.2d 473, 476

(1983) (when a support award is small, even the slightest reduction "has great impact").

¶12     Specifically,

> [w]henever a court issues or modifies an order concerning child support, the court shall determine the child support obligation by applying the standards in [§ 40-4-204, MCA,] and the uniform child support guidelines adopted by the department of public health and human services . . . . The guidelines must be used in all cases, including cases in which the order is entered upon the default of a party and those in which the parties have entered into an agreement regarding the support amount.

Section 40-4-204(3)(a), MCA. Montana law therefore requires courts to follow statutory

criteria and Montana's Child Support Guidelines whenever awarding or modifying child

support, always considering the parties' financial circumstances at that time. *See*

§ 40-4-204(3)(a), MCA; *In re Marriage of Martinich-Buhl*, 2002 MT 224, ¶¶ 15, 19,

311 Mont. 375, 56 P.3d 317; *Albrecht*, ¶ 12. The governing statutory criteria are as follows:

(1)     In a proceeding for . . . child support, the court shall order either or both parents owing a duty of support to a child to pay an amount reasonable or necessary for the child's support, without regard to marital misconduct.

(2)     *The court shall consider all relevant factors*, including:

(a)     the financial resources of the child;

(b)     the financial resources of the parents;

(c)     the standard of living that the child would have enjoyed had the marriage not been dissolved;

(d)     the physical and emotional condition of the child and the child's educational and medical needs;

8

(e) the age of the child;

(f) the cost of day care for the child;

(g) any parenting plan that is ordered or decided upon; and

(h) the needs of any person, other than the child, whom either parent is legally obligated to support.

Section 40-4-204(1)-(2), MCA (emphasis added); *accord* Admin. R. M. 37.62.101-48 (Guidelines).

¶13 A child support award determined under Montana's Child Support Guidelines is presumed adequate and reasonable, "unless the court finds by clear and convincing evidence that the application of the standards and guidelines is unjust to the child or to any of the parties" or "inappropriate in that particular case." Section 40-4-204(3)(a), MCA. In such a case, the court must state its reasons for deviating from the Guidelines. Section 40-4-204(3)(b), MCA.

¶14 Once a court awards child support, it may be modified only in specific circumstances. As pertinent here, § 40-4-208(2)(b)(i), MCA, provides that child support may be modified "upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." This section requires two evidentiary showings to invoke a court's authority to modify a prior support obligation: changed circumstances and resulting unconscionability. *See O'Moore*, ¶¶ 8, 11 (citing *In re Marriage of Jarussi*, 1998 MT 272, ¶¶ 6, 7, 14, 291 Mont. 371, 968 P.2d 720); *accord In re Marriage of Schmeiding*, 2003 MT 246, ¶¶ 15, 36, 41, 317 Mont. 320, 77 P.3d 216 (without all required

9

findings under § 40-4-208(2)(b)(i), MCA, the court is "powerless to modify the original [support] award").

¶15 A party seeking modification of child support under § 40-4-208(2)(b)(i), MCA, must make a threshold showing of "changed circumstances" warranting review of a prior support obligation. *See In re Marriage of Carter-Scanlon*, 2016 MT 190, ¶ 10, 384 Mont. 273, 378 P.3d 1157 (citing *Pearson*, ¶ 41 ("a finding of changed circumstances is a prerequisite to any inquiry into the unconscionability of a prior support award")). The initial showing under § 40-4-208(2)(b)(i), MCA, need not be exhaustive. *See Pearson*, ¶¶ 26, 36, 44 (preliminary affidavits may suffice to demonstrate changed circumstances). At this early stage, the moving party is not required to prove unconscionability but must simply offer sufficient facts to justify further development through discovery or hearing. A significant change in a party's financial circumstances, whether voluntary or involuntary; changed custody arrangements; children aging; time elapsed since the support order, or cost of living increases may constitute "changed circumstances" under § 40-4-208(2)(b)(i), MCA.[6]

---

[6] *See, e.g.*, *Rome*, 190 Mont. at 497, 621 P.2d at 1092 (voluntary change in employment and remarriage); *In re Support of Rockman*, 217 Mont. 498, 501, 705 P.2d 590, 591-92 (1985) (favorable economic changes for one party, including a large inheritance, and unfavorable changes for the other); *In re Marriage of Barnard*, 264 Mont. 103, 107, 870 P.2d 91, 93-94 (1994) (husband's financial success); *O'Moore*, ¶¶ 5-6 (remarriage and increased custody); *In re Marriage of Damschen*, 2011 MT 297, ¶¶ 9-10, 363 Mont. 19, 265 P.3d 1245 (wife obtained better paying job, children no longer home-schooled, father's custody increased, increased expenses); *McNeff*, 207 Mont. at 299-300, 673 P.2d at 474-75 (wife's job loss and increased cost of living); *Jarussi*, ¶ 8 (eight years since support order, children older, increased earnings); *Carter-Scanlon*, ¶¶ 4-5 (disability diagnosis); *Pearson*, ¶¶ 24-27, 36 (decreased visitation, forced liquidation of assets to survive, spouse's increased income); *Kummer*, ¶ 5 (increased day care costs); *In re Marriage of Forsman*, 229 Mont. 411, 414, 747 P.2d 861, 863-64 (1987) (career change and economic downturn); *In re Marriage of Barber*, 252 Mont. 458, 460-62, 830 P.2d 97, 98-99 (1992)

¶16 Once the movant shows changed circumstances since the prior support order, the court "must then determine whether the change [in] circumstances is 'so substantial and continuing as to make the existing terms unconscionable.'" *Carter-Scanlon*, ¶ 10 (citing *Pearson*, ¶ 41). The crucial inquiry under § 40-4-208(2)(b)(i), MCA, is unconscionability, i.e., the inequity of an existing support obligation.[7] We previously explained that:

> [The] interpretation [of unconscionability] must be made on a case by case basis after scrutinizing the underlying facts. However, that interpretation must begin with an objective standard. That standard is found in the basic purpose behind support payment and how that purpose is to be achieved. The purpose of ordering child support payments is to "make reasonable provision(s) for [a] spouse and minor children during and after litigation." Section 40-4-101(4), MCA. Child support must reflect a balance among the needs of the parties involved and the ability of the parents to pay. Thus, *the determination of what is unconscionable is made by reference to the relative position of the parties, and how close to this balance the present arrangement is*.

*McNeff*, 207 Mont. at 300-01, 673 P.2d at 475 (internal citations and punctuation altered, emphasis added); *In re Marriage of Gingerich*, 269 Mont. 161, 164, 887 P.2d 714, 716 (1994) (citing *Gall v. Gall*, 187 Mont. 17, 19-21, 608 P.2d 496, 498-99 (1980)).

---

(cost of living increase as children aged over the 10 years since order). A showing of "changed circumstances," however, is not necessarily determinative of unconscionability. *See Barnard*, 264 Mont. at 107, 870 P.2d at 93-94 (while "obvious that [husband]'s financial success constitute[d] a change in circumstances, . . . this fact, by itself, [did] not render the prior child support award unconscionable"); *In re Marriage of Gingerich*, 269 Mont. 161, 165-66, 887 P.2d 714, 716 (1994) (change in income insufficient alone to warrant modification where wife failed to present "sufficient substantive evidence of an increase or even a degree of increase of cost of living").

[7] "[U]nconscionable" has not been defined by statute and is best understood as a context-sensitive standard that may reflect extreme unfairness or a result that shocks the conscience, depending on the particular facts of a case. *See Green v. Green*, 176 Mont. 532, 539, 579 P.2d 1235, 1239 (1978) ("we know when we are shocked"); *Mooney v. Brennan*, 257 Mont. 197, 201, 848 P.2d 1020, 1023 (1993) ("[u]nconscionability . . . hinges upon a case-by-case analysis after scrutinizing the underlying facts"). We reaffirm that unconscionability remains a flexible and high bar.

¶17 Accordingly, a determination under § 40-4-208(2)(b)(i), MCA, of whether the changed circumstances are so substantial and continuing as to affect the equity of the existing support award necessarily requires evidence and comparative analysis of the parties' "relative position[s]." This is why a court deciding a motion for modification of child support must consider the financial needs and resources of the parents and children at the time of modification, which must be evidenced in the record and not merely speculative or possible sometime in the future. *See Thane*, 238 Mont. at 353, 777 P.2d at 884; *Gall*, 187 Mont. at 19-21, 608 P.2d at 498-99; *Gingerich*, 269 Mont. at 165, 887 P.2d at 716; *Pearson*, ¶ 44; *Martinich-Buhl*, ¶ 16; *McNeff*, 207 Mont. at 301, 673 P.2d at 476 (changed circumstances "must be analyzed in light of the prevailing facts"). The court not only considers these factors when actually modifying child support, but also when deciding whether or not to do so under § 40-4-208(2)(b)(i), MCA. Although a court's determinations under § 40-4-208(2)(b)(i), MCA, are discretionary, the court "must apply its discretion in a realistic manner, taking into account the actual situation of the parties." *Noel*, 265 Mont. at 252, 875 P.2d at 359.

### 1. The District Court Erroneously Concluded that Heidi Failed to Show Changed Circumstances.

¶18 Here, the District Court denied Heidi's motion for modification of child support upon finding that (1) Heidi's 65% decrease in income due to cessation of spousal maintenance was anticipated under the 2018 decree and therefore not a changed circumstance warranting review of child support; (2) Heidi failed to show any

corresponding change in the children's circumstances; and (3) "nothing with Kyle ha[d] changed" since 2018.

¶19 First, Heidi's alleged 65% decrease in income since 2018 was a "changed circumstance" under § 40-4-208(2)(b)(i), MCA. In dismissing her claim, the District Court reasoned that expiration of spousal maintenance was a "foregone conclusion" anticipated in the 2018 decree. But, in addition to anticipating expiration of maintenance in five years, the decree also anticipated that Heidi would eventually achieve the $91,200 annual income imputed to her in the 2018 child support calculation. While the expiration of spousal maintenance may have been anticipated in the decree, it was not foreseen that Heidi would face prolonged health impairments that would limit her earning capacity during that transition. Heidi supplied evidence from her doctor that she was in a debilitating car accident and suffered complications that significantly delayed her entry into the workforce and limited her employment options. She received a settlement from the car accident, which she claimed to have depleted to make ends meet. In this context, even an expected change may contribute to unconscionability when it interacts with additional unforeseen and continuing hardship. Further, even assuming, arguendo, that Heidi's new job with the Legislature reflected her true earning potential in 2024/25, that job would pay approximately $50,000 per year, more than $40,000 short of her expected earning capacity under the 2018 decree. Heidi's substantial decrease in income and intervening circumstances prohibiting her from actually achieving the imputed income upon which the 2018 child support award was calculated were "changed circumstances" under § 40-4-208(2)(b)(i), MCA.

13

¶20 Second, Heidi's claim that, six years post-divorce, the children were "not insured by Kyle through an appropriate health care plan," including one "child with special needs who need[ed] appropriate health insurance," was a "changed circumstance" under § 40-4-208(2)(b)(i), MCA. As the District Court was aware, having issued the 2018 dissolution decree, three of the couple's six children had since turned 18 and the other three children had aged from between 5-8 years old to between 11-14 years old. *See In re Marriage of Barber*, 252 Mont. 458, 461, 830 P.2d 97, 99 (1992) ("expenditures for teenagers are markedly higher than expenditures for younger children"); *In re Marriage of Forsman*, 229 Mont. 411, 414, 747 P.2d 861, 865 (1987) (same). Heidi's affidavit further noted concerns about whether the parties' special needs child was insured through an appropriate healthcare plan. While general in phrasing, this allegation implicates a material support obligation under § 40-4-204(4), MCA ("medical support order" required in every order establishing a child support obligation), and supports the need for further factual inquiry.

¶21 Finally, Heidi's claim that Kyle's income increased since 2018 due to his orthodontist practice expanding, as evidenced by his living in a million-dollar home and recently purchasing a $150,000 speed boat and two new vehicles, was a "changed circumstance" under § 40-4-208(2)(b)(i), MCA. *See Barnard*, 264 Mont. at 107, 870 P.2d at 93-94 (husband's financial success "obvious[ly] . . . constitute[d] a change in circumstances"). In *Albrecht*, ¶ 13, we recognized that self-employment income, like Kyle's, "is not as predictable" as salaried/wage-earning income due to "fluctuations in profits from year to year." Despite Kyle's claim that his income had not changed since

14

established during the 2018 divorce, Kyle's income increased as a matter of fact by $60,000 per year since 2021, the last year he paid spousal maintenance, and $1,263 per month since May 2024, reflecting the decrease in child support owed for the three aged-out children. The 2018 decree anticipated these changes would occur, exactly as they did, in five years' time. It was improper for the District Court to conclude summarily that, just because these changes were inevitable, they could never warrant review or recalculation of child support.

¶22 We hold that the foregoing specific "changed circumstances" were sufficient to satisfy the minimum threshold showing under § 40-4-208(2)(b)(i), MCA, triggering further review of the parties' relative financial positions to determine whether the changed circumstances were "so substantial and continuing as to make the existing terms" of the 2018 child support order "unconscionable." The District Court erred in concluding otherwise.

2. **The District Court Abused Its Discretion in Denying Discovery on Heidi's Motion.**

¶23 Here, the District Court summarily denied Heidi's motion to modify child support without allowing discovery into Kyle's current finances. We have established that § 40-4-208(2)(b)(i), MCA, requires two evidentiary showings: changed circumstances and resulting unconscionability. Heidi satisfied the threshold showing of changed circumstances and therefore bore the burden of further proving that the changed circumstances were "so substantial and continuing as to" render the 2018 support obligation "unconscionable." We hold that the District Court abused its discretion in

15

denying Heidi an opportunity to develop the evidence necessary to make this required showing under § 40-4-208(2)(b)(i), MCA.

¶24    M. R. Civ. P. 26 provides generally that "parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." *See also* § 40-4-103, MCA (Montana Rules of Civil Procedure apply to all proceedings under Title 40, chapter 4). The purpose of discovery is the ascertainment of truth; "[d]iscovery fulfills this purpose by assuring the mutual knowledge of all relevant facts gathered by both parties which are essential to proper litigation." *Richardson v. State*, 2006 MT 43, ¶ 22, 331 Mont. 231, 130 P.3d 634 (citation omitted). Discovery rules are to be liberally construed to make all relevant facts available to the parties before trial to reduce surprise and unfair advantage. *Cox v. Magers*, 2018 MT 21, ¶ 15, 390 Mont. 224, 411 P.3d 1271; *Richardson*, ¶ 52 (discovery rules "impos[e] a broad duty of disclosure").

¶25    In *Richardson*, the plaintiff, who sought recovery of damages sustained during a slip and fall at a Montana State school pool, served interrogatories and requests for production of evidence of any prior slip and fall accidents in the facility. The State refused to produce any information related to prior falls, even after having been ordered to produce it, until 11 days before trial, when it finally provided evidence of eight previous similar slips and falls. *Richardson*, ¶¶ 5, 8, 13-14. After a jury found the State not negligent, the plaintiff filed a motion to amend the judgment in which she sought entry of a default judgment on the issue of liability against the State, as a sanction for the State's discovery abuses; and, alternatively, a new trial on the grounds of the State's discovery misconduct. In denying the plaintiff's motion, the district court concluded that the State did not abuse the discovery

16

process, and the plaintiff appealed. We reversed and ordered entry of judgment against the State as sanctions for its discovery abuses. *Richardson*, ¶¶ 17-18, 20, 53. In discussing the particularly egregious nature of the State's conduct, we noted it had forced the plaintiff to defend against summary judgment and motions in limine without the evidence of other falls. We found the lack of discovery highly prejudicial to the plaintiff because it prevented her from building her case by "fully investigating and developing the evidence." *Richardson*, ¶¶ 55, 59, 61.[8]

¶26 Here, while denying Heidi her request to conduct discovery, the District Court reasoned that she could not show a change in Kyle's financial circumstances without "concrete evidence" and concluded that her claims of Kyle's increased income were merely speculative—equally as speculative as saying his income and spending habits had remained the same since the divorce. For reasons stated above, Kyle's income had increased as a matter of fact by $60,000 annually since 2021 and $1,263 monthly since May 2024—an obvious changed circumstance. As in *Richardson*, denying discovery of Kyle's financials precluded Heidi from obtaining the very evidence necessary to prove unconscionability of the existing support order under § 40-4-208(2)(b)(i), MCA. *See McNeff*, 207 Mont. at

---

[8] *See also In re Marriage of West*, 203 Mont. 469, 470-71, 661 P.2d 1289, 1289-90 (1983). There, we remanded for an evidentiary hearing where the court summarily denied the mother's motion for modification of child support based only on the father's "cash flow," as presented in his proposed findings and conclusions. We noted that:

> [a] more accurate picture of the father's ability to pay could be obtained by an examination of the father's actual expenditures over this time period to support the lifestyle in which he lived. This lifestyle was somehow more plush than the evidence of actual cash-flow he presented to the trial court. Perhaps proper discovery would have revealed his actual ability to pay rather than his ability to pay based solely on the father's testimony to his cash on hand.

300-01, 673 P.2d at 475, *supra*; *Albrecht*, ¶ 12 ("[t]he end sought is equity and accuracy in determining income of the party charged with child support obligations"). Further, after acknowledging that any claim regarding Kyle's current financial circumstances was speculative without supporting evidence, the court then erroneously found and concluded that Kyle's income had not changed in six years without any evidentiary basis to support its finding.

**3. The District Court Abused Its Discretion in Denying an Evidentiary Hearing on Heidi's Motion**.

¶27    In *Brown*, we considered the exact question presented here—whether the lower court abused its discretion in denying a motion to modify child support without holding an evidentiary hearing. *Brown*, ¶ 12. There, the movant alleged under § 40-4-208(2)(b)(i), MCA, that his "income and financial circumstances [had] changed significantly" since entry of the order but did not specify "why or to what extent his income had fallen." *Brown*, ¶ 5. He requested a hearing, which his ex-wife opposed on the grounds that he "failed to raise sufficient facts" to support his motion. The movant then supplemented his motion with a memorandum vaguely attributing his decrease in income to the record-low price of gas. *Brown*, ¶ 6. The court eventually set a hearing but later vacated it upon receipt of the ex-wife's status report, which included discovery of transactions refuting the movant's vague claims of a worsened financial condition. *Brown*, ¶ 8. The court ordered the movant to respond, which he did, this time adding only that his ex-wife was "making more money" and he was "making less money," again without explanation of how or why. *Brown*, ¶ 9.

18

After a telephonic conference, the court denied the motion due to the movant's failure to show "a basis for modifying his child support obligations." *Brown*, ¶ 10.

¶28 We affirmed the court's decision to deny an evidentiary hearing and its ultimate decision on the merits, stating:

> In his motion to modify his child support obligation, John claimed his income and financial circumstances had changed significantly. . . . John filed a supporting affidavit that echoed this conclusory refrain and generally blamed the price of natural gas for his alleged earnings decline. John did not explain how the drop in the price of gas affected his income or the extent to which his income had declined since the decree of dissolution. From this nebulous claim of changed circumstances, John maintains that he is entitled to an evidentiary hearing.
>
> John cites *Harrington* for the proposition that a district court should hold an evidentiary hearing (1) if there are disputed issues of material fact and (2) if the court must weigh the credibility of witnesses. While these considerations would generally counsel in favor of a hearing, we note that John has not actually mustered a dispute of material fact. . . . John merely made conclusory statements about the need for a child support modification but did not make a showing of changed circumstances arguably demonstrating that the existing support order was unconscionable. We are not inclined to compel the District Court to hold a hearing to find the facts that John has repeatedly failed to assert.

*Brown*, ¶¶ 16-17 (citing *Harrington v. Energy West Inc.*, 2015 MT 233, ¶ 11, 380 Mont. 298, 356 P.3d 441).

¶29 In *Damschen*, we considered whether the lower court erroneously declined to hold an evidentiary hearing to address the sufficiency of the allegations of changed circumstances. *Damschen*, ¶ 23. It was undisputed that, since their divorce, the mother obtained a well-paying job, she no longer home-schooled the children, and the children no longer lived with her full-time. The father asserted that recalculation of his support obligation was necessary because "the foundational elements upon which the original child

19

support calculation was based no longer existed." *Damschen*, ¶¶ 8-11. Because the lower court had previously ordered the changes to schooling and custody, we concluded it was not necessary to hold a hearing to develop evidence of changed circumstances "already in the court record." *Damschen*, ¶¶ 23-26.

¶30 Here, unlike in *Brown*, Heidi made more than a "nebulous" claim that changed circumstances rendered the 2018 child support award unconscionable. Instead, she specifically alleged a substantial 65% decrease in income, debilitating health complications delaying her entry into the workforce, and that the children, including one with special needs, lacked adequate health insurance. As in *Damschen*, the essence of Heidi's motion for modification was that the "foundational elements" upon which the 2018 child support award was calculated "no longer existed." Also, unlike in *Brown*, Heidi and Kyle's filings raised factual issues regarding their financial resources material to application of § 40-4-208(2)(b)(i), MCA. Finally, unlike the court in *Brown*, which permitted discovery of party financials, ordered supplemental briefing, and conferenced with the parties prior to ruling, the District Court here ruled on the motion without allowing discovery or holding a hearing.

¶31 Further, although the District Court here noted it was "intimately familiar" with their divorce, the critical question of Heidi's and Kyle's financial circumstances had not been decided since 2018, and, unlike in *Damschen*, their relative abilities to pay child support in 2024 was not "already in the court record." Although the District Court emphasized its familiarity with the case history, such historical familiarity alone does not justify denial of discovery and an evidentiary hearing when current economic conditions are contested.

20

Financial circumstances, particularly self-employment income like Kyle's, can fluctuate significantly over a relatively short period. Moreover, it had been over six years since the prior calculation, and Kyle's financial circumstances, like any litigant's, could reasonably have changed during that extended period, warranting current evidence rather than relying solely on historical knowledge.

¶32 Accordingly, we hold that the District Court abused its discretion in denying Heidi an opportunity to develop the evidence required for her claim under § 40-4-208(2)(b)(i), MCA. We emphasize that our decision does not dictate the outcome of Heidi's modification request. It simply holds that, given the allegations and changed circumstances presented, she was entitled to develop a record and be heard. Future decisions must remain grounded in statutory standards and factual support.

**CONCLUSION**

¶33 Here, the District Court determined that neither Heidi's, Kyle's, nor the children's circumstances had changed, and thus did not warrant review or recalculation of the 2018 child support order, without allowing Heidi to conduct discovery or holding a hearing to develop evidence and resolve issues of fact material to an unconscionability determination under § 40-4-208(2)(b)(i), MCA. We hold the District Court erroneously concluded that Heidi failed to show changed circumstances triggering review of the existing support order under § 40-4-208(2)(b)(i), MCA. We further hold that the court abused its discretion when it summarily denied modification of child support without allowing discovery or holding a hearing on Heidi's motion.

21

¶34 Accordingly, we reverse the District Court's January 2025 order and remand for grant of Heidi's discovery request and for an evidentiary hearing to determine whether the parties' changed circumstances were so substantial and continuing as to render the 2018 child support order unconscionable under § 40-4-208(2)(b)(i), MCA.

/S/ KATHERINE M BIDEGARAY

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON

Justice Jim Rice, dissenting.

¶35 The always difficult and detailed task of determining parties' financial obligations to each other necessitates application of the abuse of discretion standard to guide and govern this Court's review in these matters. In my view, the Court's opinion does not capture the nuances of this complex case that led the District Court to deny the motion, and I would conclude it did not abuse its discretion by doing so.

¶36 In big picture, this case involves a "pleading-stage" issue. The District Court reasoned that, "notably absent from Heidi's motion [for modification] is any changes in the needs of the children." It noted that "Heidi's motion . . . has nothing to do with the needs of the children. There has been no showing there has been any change in the needs of the children making the previous Order unconscionable." The District Court's assessment of the motion was made in application of the statute, which authorizes

22

modification of a previous decree of child support "upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." Section 40-4-208(2)(b)(i), MCA. The District Court's assessment of the claim was correct. Heidi's opening motion, supporting brief and affidavit specified nothing about the needs of the children, including whether the needs are the same or have changed, or what the current level of expense was for their care, and provided no demonstration that the current level of child support was inadequate. The entirety of the motion was about changes in Heidi's life. While potentially relevant, these changes alone did not make out a case that the children's current support level was unconscionable. Even in her more extensive reply brief, filed after Kyle's written response, Heidi did not address the children's support needs. Rather, it focused on Kyle's income, reasoning that "if it is the case that Kyle's income has increased," then that would be a reason to increase support. Again, nothing was provided about the children's current needs vis-à-vis the current level of support. Neither Heidi's motion or briefing raised a health insurance issue, which was only referenced in a second affidavit by Heidi attached to her reply brief. Therefore, Kyle could not respond to the issue.

¶37 Rather, Heidi's motion was heavily premised upon the expiration of the maintenance award under the 2018 decree of $5,000 per month for five years:

> . . . $60,000 was for spousal support. Heidi no longer receives that support. *Affidavit of Heidi Dorrington.* Heidi currently does not have reliable income but will be making $24/hour working at the upcoming Legislative session. *Id.* As a result, Heidi's income is approximately 65% less than it was when the child support calculations were entered.

23

About this emphasis, the District Court reasoned that the cessation of the annual $60,000 maintenance award after five years was an assumption under the original decree, and that it had "set the amount 5 years in advance to give Heidi additional time to start her career and prepare for any changes." Noting again that "nothing has been alleged regarding the need of the children," the District Court noted that "[c]hild support is not to be used as spousal support." While this observation is generally correct, it was particularly apt in this case, where the motion was grounded only upon changes in Heidi's situation, not the children's.

¶38 The Court seems to justify the deficient claim by holding that the showing of changed circumstances "need not be exhaustive." Opinion, ¶ 15. However, the request must be facially sufficient to satisfy the statutory requirement of "a showing of changed circumstances *so substantial and continuing* as to make the terms *unconscionable*." Section 40-4-208(2)(b)(i), MCA (emphasis added). Under this plain reading, alleged changes must be both "so substantial" and "continuing" as to render the current support level for the children unconscionable. That was not established by Heidi's request.

¶39 More particularly in this case, the complex issue of the valuation of Kyle's practice was heavily litigated and contested by the parties in 2018, including with expert witnesses. Opening that issue back up could be necessary in the appropriate case, but should not be undertaken lightly. The long and difficult history of this case, over which the District Court Judge presided from the beginning and about which it expressed its intimate knowledge, involved extraordinary findings in the original judgment that Heidi's family had undertaken public attacks upon Kyle and his practice, seeking to undermine its success.

Kyle has reason to be concerned that he will be subjected to further attacks upon his practice, and thus, a motion that makes out a proper case that the children's current level of support has become unconscionable, as stated by the statute, should be required before discovery is ordered, which is also subject to abuse of discretion review. Yet, nothing here was alleged that the children's "standard of living" has been diminished or compromised under the current support. *Albrecht v. Albrecht*, 2002 MT 227, ¶ 41, 311 Mont. 412, 56 P.3d 339. The Court concludes that the observed purchase of a new boat and vehicles by Kyle is a "changed circumstance" satisfying the initial statutory threshold. Opinion, ¶ 21. But the fact that a parent paying child support makes purchases does not, by itself, constitute a changed circumstance; such a showing requires a demonstration that the current level of child support is "unconscionable."

¶40 The Court believes the District Court concluded that the circumstances here would "never warrant" review or recalculation of child support. Opinion, ¶ 21. I do not read the District Court's order to so conclude, because it premised its order on the particular state of the pleadings. In my view, the Court's decision implies that general changes in circumstances should "always warrant" review, and thus undermines the abuse of discretion standard of review.

¶41 I would conclude that the District Court did not abuse its discretion on this record. Nothing in such a holding would prohibit child support to be assessed upon proper litigation.

/S/ JIM RICE

Chief Justice Cory J. Swanson joins in the dissenting Opinion of Justice Jim Rice.

/S/ CORY J. SWANSON